SAMUELS, J.
It is unnecessary in this case, to consider whether a personal representative, holding his appointment under .authority of foreign laws, if found in Virginia, can under all circumstances, be sued here in his official character. There is enough in the peculiar circumstances of this case to give jurisdiction to our courts. The appellant, the defendant below, resided in Virginia at the date of those transactions out of which this litigation arises: those transactions had their origin in this state. The bill alleges a case of fraud, and want of proper diligence against the appellant ; and upon that charge they predicate a claim merely personal and pecuniary. The appellant resists this demand, but admits that he is invested with the legal title to certain land lying in the state of Mississippi, and to certain choses in action payable in that state; the equitable title to all which, on certain *terms, enures to the benefit of complainants. It is not alleged by the appellant that creditors of Stratton’s estate in Mississippi or elsewhere, are in anywise concerned in the property in his hands; nor is it alleged by either party in pleading, or shown by proof, that the subject in controversy is affected in any degree by laws peculiar to the state of Mississippi; the case seems to have proceeded upon the theory that it was governed by the general principles prevailing in courts of equity. The appellant being within the jurisdiction of the court, full *417 effect may be given to its decree by the exercise of its authority over his person. Thus the parties who are exclusively interested are before the court; they are at issue whether the appellant is liable to a demand of the appellees merely pecuniary, or whether he shall be held to be a mere trustee for their benefit, on equitable terms. The facts above stated bring the case within the jurisdiction of our courts. This conclusion is fully sustained by the decision of this court recently made in the case of Dickinson v. Hoomes’ adm’r, 8 Gratt. 353, upon a review of many decisions touching the question.
Passing from the question of jurisdiction to the merits of the case, we are met at the threshold, by the fact that such of the debts due Stratton’s estate in Mississippi, as give rise to this controversy, were either in a very precarious condition, or utterly insolvent. That due from King and Puckett was partially secured by a deed of trust on land and slaves. The land was about six hundred and sixty-six acres in quantity; and the witnesses differ as to its value; some of them estimate it at fifty cents per acre; others at prices ranging from fifty cents up to a dollar and fifty cents. The weight of proof, however, induces the belief that it could not have been sold for as much as fifty cents per acre, payable in specie or its equivalent. This land and the slaves conveyed by the deed *of trust, were in the hands of Samuel M. Puckett, one of the debtors: This party and John D. King, with whom he was bound, are proved to have been utterly insolvent. It is moreover shown that Puckett removed the slaves beyond the limits of the state of Mississippi, with the fraudulent intent to defeat the trust; and thus the security afforded by the slaves was destroyed. No attempt is made to charge the appellant on account of these slaves; it is therefore unnecessary to say more about them. The land, the only remaining security, was in the hands of Puckett, the fraudulent debtor. The trustees were Richard M. Hobson and William R. Crane; and Hobson is shown to have been insolvent. Such was the securitjE and such the means of making it available.
Powell having become the administrator on Stratton’s estate in Mississippi, caused the trustees to sell the land, and caused it to be bought in for the benefit of the estate at the price of four dollars twelve and a half cents an acre. That he bought the land with the view of benefiting the estate, and without any purpose of individual profit, is sufficiently shown by the proof. Powell assigns as a reason for buying the land, his anxiety to get it out of the hands of Puckett, and to prevent Hobson, the insolvent trustee, from receiving’the price, if it had been sold to another. He alleges moreover that the land was run up to the price of four dollars by Prtckett’s agent, with a view to defraud Stratton’s estate by means of collusion with Hobson, the trustee. There is no direct proof of this fraudulent intention ; however, considering the exorbitancy of the price of four dollars per acre, we have reason to believe there was no purpose of paying it in good faith.
Powell says nothing about the pecuniary condition of Crane, the other trustee, nor does he say whether, by the law of Mississippi, he would have been responsible *for money paid to his cotrustee Hob-son, or by him covinously released to the purchaser.
In view of the small intrinsic value of the land, and the utter insolvency of the debtors for all beyond that value, and the insolvency of Hobson the trustee, I am of opinion Powell did the best for the estate which could be done in the difficult circumstances in which he was placed. The land, the only available security, is saved to the estate; this was done at a price nominally far above its value, yet it was paid out of the debt due from King and Puckett, which was of no value; and the estate loses nothing thereby. If Powell, under the circumstances, had in some degree mistaken his duty, yet his great diligence and perfect integrity of purpose should exempt him from liability. The extraordinary embarrassment in the monetary affairs in Mississippi, at the .time of Powell’s administration there, would seem to require some relaxation of the rules governing the administration of estates there; at least, the administrator should not be held responsible when it appears that the ordinary course of administration would probably, not to say inevitably, have resulted in a greater loss. In this case the administrator acted wisely in buying the land, which would not, as far as we can now judge, have sold to another for more than fifty cents per acre, if so much, payable in a sound medium. I am of' opinion the appellant should not be held to a personal liability on account of his purchase of the land.
Another question between the parties is, whether Powell the appellant should be charged for his failure to dispose of the debt due from the Brandon Bank? The appellees take no exception on account of the fact that a portion of this debt accrued from receiving it indirectly in payment of a debt due from Richard M. Hobson above named, to Stratton’s estate. They insist, however, that Powell should be charged with *the market value of the Brandon Bank debt, which the commissioner fixes at ten per cent, of the nominal amount. He accordingly charges the appellant one hundred and ninety-six dollars and seventy-seven cents, that sum being ten per cent, on the Brandon Bank notes received on Hobson’s debt as aforesaid ; and the further sum of sixty-five dollars and twenty-two cents, that being ten per cent, on the principal and interest on the certificate of deposit made by Stratton in his life time in that bank.
The principle on which this claim is made, is in conflict with that on which the claim is made to charge the appellant in regard to the land. It is said in regard to the land, that he was going beyond his *418 official duty in purchasing; yet it is said he should ' have sold this Brandon Bank debt,'whereas his official duty required the collection and not the sale of it. I am of opinion the appellant acted with prudence at the time in refusing to sell, although subsequent events have shown that if a sale could have been effected on any terms, it had better been made. The proof shows that the credit of the bank had fallen so low about the date of Powell’s qualification, that its paper was selling at a discount, which is variously stated by the witnesses to be from • eighty-five to ninety-five per cent. ; that it wtiuld have been very difficult, if not impossible, to have disposed of a large amount of it for specie even at that discount. The bank has''since fathed entirely ; and thus the debt is of no value. The appellant had been told, or others had been told, by the directors, that the bank would meet its liabilities; having as they said the means of doing so. Thus the alternative was presented, of selling, if a sale could be made, at a discount ranging from eighty-five to ninety-five per centum, or awaiting the chance of full payment. The appellant decided properly under the circumstances existing at the time; *and he should not be made to suffer because of subsequent events. If the circumstances could be reversed, that is, if the sale had been effected at the discount, and if the bank had become able to pay its debts, he would justly have been held responsible for the loss.
On the whole case, I am of opinion the appellees have shown no right to charge the appellant with any amount on account of the specific charges alleged. His diligence, discretion and perfectly g-ood faith give him a claim to the protection of a court of equity.
The land in the hands of Powell, and any rents and profits received by him, and the Brandon Bank debt, should be regarded as trust subjects, to be administered under the direction of the court, in the manner pointed out by the decree of this court.
The other judges concurred in the opinion of Samuels, J.
The decree was as follows:
The court is of opinion, that the said dei cree is erroneous; it is therefore adjudged, ordered and decreed that the same be reversed and annulled; and that the appellant recover of the appellee Ann Elizabeth Stratton, sometimes called Elizabeth Stratton, and William E. Royall the next friend of the infant appellees, the costs of the appellant expended in the prosecution of his appeal here. And the court proceeding to render such decree, as the Circuit court should have rendered, it is further decreed and ordered, that Benjamin H. Powell be held and treated as a trustee holding the land in the proceedings mentioned, and any rents and profits thereof by him received, and the debt due from the Brandon Bank, as a trust subject to be administered under the direction of the Circuit court. With the purpose of ascertaining the proper application of any funds arising from said ^subject, it is further decreed and ordered, that an account be stated between Benjamin H. Powell and the estate of Milner S. Stratton deceased, in which account said Powell shall be permitted to debit the estate with all reasonable disbursements made by him in Mississippi, with the view to protect the interests of the estate there; also with any money paid over to the executor or executrix in Virginia; also with the sum of one hundred and fifty dollars as a compensation for his second trip to Mississippi ; also with a reasonable commission on money due the estate and received by said Powell. In the said account the estate is to have credit for any money received by said Powell as administrator, and for the avails of the trust subject, which are to be paid to Powell, after deducting the costs of executing the trust. Upon the account so to. be taken, if the appellant shall be in debt to the estate, the several legatees of Milner S. Stratton deceased, may have decrees for the balance, ratably, in proportion of the amounts of their legacies. If, however, the administrator shall be in advance with the estate, the court does not deem it proper to give him a decree against the assets in Virginia.
The cause is remanded, to be proceeded in according to the principles herein declared.