## Richmond.

## DAVIS v. MORRISS' EX'ORS, &C.

### December 8th, 1881.

1. EQUITABLE JURISDICTION.—In a case of fraud, of trust, or of contract, the jurisdiction of a court of equity is sustainable wherever the *person* can be found, although lands not within the jurisdiction of the court may be affected by the decree.

2. IDEM—*Foreign States.*—The pendency of a suit in a foreign State is no bar to a suit in another State for the same matter, either at law or in equity. The States, in a jurisdictional sense, are *foreign* to one another. The judgment of the court of another State does not merge the original cause of action in this State. 2 Gratt. 532.

3. IDEM—*Concurrent.*—Even among courts of concurrent jurisdiction, the rule that the one which first obtains jurisdiction has the right to decide every question in the case, is subject to limitations, and is confined to suits between the same parties seeking the same relief, and to such questions as arise properly in the progress of the suit first brought, and does not extend to all matters which may, by possibility, become involved in it.

4. IDEM—*Trustee.*—A citizen of Mississippi, by will, appointed a citizen of Virginia trustee of a legacy for his daughter and her children; as to which trust, it is alleged, the trustee was guilty of a breach. The daughter and her child became residents of Virginia. In a suit by the child against the executors of the trustee to hold his estate responsible for the alleged breach of trust committed in reference to the estate of the testator in Mississippi—

HELD:

    The Virginia court has jurisdiction, and should exercise it, though there be another suit pending in Mississippi by another legatee of the testator, to recover a legacy left him, and to which the plaintiff and the executors of the trustee are parties.

5. CHANCERY PRACTICE—*Bills of review.*—Every distinct averment must be taken as true upon a mere application to file a bill of review.

6. IDEM—*Specifications and answer.*—It is settled doctrine that when an account is ordered of a fiduciary's transactions, if additional objections to settled *ex parte* accounts are discovered, the plaintiff may present the matter before the commissioner, with proper specifications in writing, and the defendant may meet it by affidavit, which has the same weight as an answer in chancery.

Appeal from a decree of the chancery court of Richmond city, refusing Westmoreland D. Davis leave to file a bill of review of certain decrees in a suit wherein Mrs. A. H. L. Davis and *als.* were plaintiffs, and Charles Y. Morriss and Robert F. Morriss, executors of Richard G. Morriss, deceased, were defendants. The appellant, W. D. Davis, was a son of Mrs. A. H. L. Davis, who was daughter of Christopher S. Morriss, who died in 1851, in Mississippi, leaving a will by which he appointed his brother, Richard G. Morriss (a citizen of Virginia), trustee, to hold a legacy of $50,000 for his daughter during her life, the principal to be divided after her death among her children. A part of the trust funds was in Mississippi, and with reference to such part it is alleged the trustee had committed a breach, and the object of the suit was to obtain redress for that breach out of the estate of the deceased trustee.

The other facts seem sufficiently stated in the opinion of the court.

*John Howard,* for appellant.

1. The decrees and proceedings are erroneous for reasons fully appearing in the bill of review.

2. The chancery court had jurisdiction to hold the executors of R. G. Morriss accountable in Virginia for his acts as trustee in Mississippi. *Tunstall* v. *Pollard's adm'r,* 11 Leigh, 1; *Dickinson* v. *Hoomes' adm'r,* 8 Gratt. 353; *Powell* v. *Stratton,* 11 Gratt. 792; *Massie* v. *Watts,* 6 Cranch, 148; *Northern Mo. R. R. Co.* v. *Michigan Cent. R. R. Co.,* 15 Howard, 223,

224 (20 Curtis' Decisions, 494), and cases cited. The chancery court ought to have exercised that jurisdiction in favor of the petitioners, and held the executors to account for the acts of the trustee in Mississippi. *Smith* v. *Gregory*, 26 Gratt. 248; *Harvey* v. *Steptoe*, 17 Gratt. 330, 331, 333; *Swope* v. *Chambers*, 2 Gratt. 319; *Claycomb's Legatees* v. *Claycomb's Ex'ors*, 10 Gratt. 591.

*John Lyon* and *John A. Meredith*, for appellees.

STAPLES, J., delivered the opinion of the court.

The only question now to be determined is, whether the chancery court erred in refusing the appellant leave to file his bill of review. We are not at all inclined to inquire whether, upon the final hearing, he will establish his claim to relief. If this court shall be of opinion that the application was improperly refused, it will simply remand the cause to the chancery court, with directions to that court to receive the bill and to proceed with the case according to the usual course and practice of the court. 32 Gratt. 697.

The rules governing application for bills of review upon the ground of errors of law are now well settled. In the case of *Rawlings* v. *Rawlings' Ex'or*, 1 Matthews, 76, the whole subject was considered by Judge Burks, and the doctrine there laid down that the case must be one that appears upon the face of the decree, or upon the proceedings which led to it, and that you are not at liberty to look into the evidence to determine whether the decree be correct. Our only inquiry, then, is whether the decree of December 7th, 1875, be erroneous, and if so, is the error such as may be corrected by a bill of review. In the opinion delivered by the chancellor, and made a part of that decree, he uses the following language: "I do not think this court has jurisdiction, under the circumstances of this case, to hold Richard

Morriss or his estate accountable here for his dealings and transactions as executor or trustee in Mississippi.  *  *  * There is evidence in this suit that proceedings have been instituted in Mississippi by the mother of Tyler Williams, deceased, who was a legatee, for the recovery of the legacy, and the plaintiff (the appellant here) and the executors of Richard Morriss are in some way parties before the court in Mississippi in the litigations now pending there; and under such circumstances it would be very improper for this court to interfere. All the parties can litigate their rights and have them adjudicated in the courts of the testator's domicil."

Under the decisions of this court, already alluded to, we are not permitted to look into the record to see whether there be such evidence as that mentioned by the chancellor. We are bound to presume there was such a suit as that described by him; that the appellant was in some way a party to the same, and that it was of such a character that the appellant might thereon litigate his rights. It will be noted, however, that the learned judge does not affirm that the appellant was a party plaintiff in the Mississippi suit, or that he had asserted or was asserting any claim there against the executor of Richard Morriss, or that this claim was necessarily involved in that litigation. All that is affirmed is that the appellant was, or is, in some way a party to the proceeding, and that if so inclined, he might have his rights adjudicated in the courts of the testator's domicil.

Now, if we turn to the record, we find that Tyler Williams was, under the will of Christopher Morriss, entitled to a legacy of $10,000, to be raised out of the issues and profits of the testator's estate in Mississippi, and in the event of his death under twenty-one years of age, the legacy was to be divided between Mrs. Louisa German, the legatee's mother, and Mr. Richard Morriss. The further fact appears that Tyler Williams died before attaining the

age of twenty-one years; and there is no doubt that the suit mentioned by the chancellor was brought by Mrs. German to recover her share of the legacy out of the testator's estate in Mississippi, and that the executors of Richard Morriss were made parties to that suit, not because any decree against them was asked or expected, but because the testator was entitled to a moiety of the legacy, and they were therefore directly interested in the subject matter of controversy. From this statement it is apparent there was nothing in Mrs. German's suit which rendered it necessary or even proper for the appellant to engage in that litigation. This will become more manifest further on in the investigation of the facts. It would seem, however, that the executors of Richard Morriss filed a cross-bill in Mrs. German's suit, and it is very probable the appellant was in some way a party to said proceeding, as suggested by the chancellor. The object of the executors in filing that bill was no doubt to recover the balance of the $50,000 legacy due the appellant and his mother out of the estate left by Christopher Morriss, and thus to release their testator's estate of all liability growing out of his alleged breach of trust.

In asserting this demand they were simply doing that which the appellant now insists ought to have been done by the Richard Morriss in his lifetime. If they succeeded, the appellant would, as a matter of course, be to that extent benefited in the realization of the balance of his legacy. But he is under no obligation, if the averments of his bill of review be taken as correct, to engage in that litigation, or in any manner to pursue the parties now in possession of the estates left by Christopher Morriss. The appellant's claim is a personal one against Richard Morriss, growing out of an alleged failure of duty, on the part of the latter, in neglecting to collect the legacy due the appellant under the will of Christopher Morriss.

The bill of review charges that Richard Morriss, after Mr. New had vacated his office of executor, took actual possession of all the real and personal estate of Christopher Morriss, in Mississippi, and operated and conducted the same. And by this action he became and acted as trustee under the will, for all the purposes thereof, in respect to keeping the property together, and cultivating and working it, to fulfill the trusts of the will, as well that to be executed in Mississippi, as those which appertain to him in Virginia. The bill then proceeds to aver that he, Morriss, after having deliberately accepted the office of trustee and taken possession of the property, surrendered it to Mrs. Davis and her husband, without having raised the legacy given the appellant, and was therefore guilty of a gross breach of trust, for which his estate was liable to the appellant. Now, upon an application to file a bill of review, all the material averments therein must be taken as true; and so treating them, it is clear that the claim of the appellant is entirely different from that asserted both by Mrs. German and the executors of Richard Morriss in the Mississippi courts. With all due submission, I cannot see in what way that claim could have been brought into the Mississippi litigation. Conceding that it might have been, under some form of proceeding peculiar to the courts of that State, the appellant was not bound to involve himself in that litigation. If these suits had been pending in the courts of this State, they would not have operated as a bar or in abatement of an independent bill by the appellant. For even among courts of concurrent jurisdiction, the rule that the one which first obtains jurisdiction has the right to decide every question in the case, is subject to limitations, and is confined to suits between the same parties or persons seeking the same relief or remedy, and to such questions or propositions as arise ordinarily and properly in the progress of the suit first brought, and does not extend to all

matters which may by possibility become involved in it. *Buck* v. *Colbath*, 3 Wallace, 334–5. In *Wick* v. *Jones*, 4 Wallace, the supreme court of the United States said : "When the pendency of a suit is set up to defeat another, the case must be the same ; there must be the same parties, or at least such as represent the same interest ; there must be the same rights asserted, the same relief prayed for—the relief must be founded on the same facts, and the title or essential basis of relief sought must be the same." These considerations, it seems to me, are sufficient to show that the legal conclusions drawn by the learned chancellor are not sound.

But, to go a step further, if it appeared that the appellant was at this time asserting in the Mississippi courts the identical claim he is asserting here, it seems, according to the authorities, the result would be the same.

In the first place, it must be premised that whilst, for all national purposes intended by the Federal constitution the States are regarded as domestic, in all other respects they are foreign and independent. They are each governed by their own laws. Their courts have no extra territorial power to enforce their decrees beyond their jurisdictional limits. They are in that sense foreign to each other. *Smith* v. *Lathrop*, 44 Penn. St. Rep. 326. And so far has this doctrine been carried that in *Beall* v. *Taylor*, 2 Gratt. 532, this court held that a judgment of a court of another State does not merge the original cause of action in this State. It seems to be equally well settled that the pendency of a suit for a matter in a foreign State or Territory is no bar to an action for the same matter in another State, either at law or in equity. The reason is said to be that the court in which the second suit is brought cannot see that the remedy in a foreign court, is equally effective and advantageous. In *Imlay* v. *Ellessen*, 2 East. 457, Lord Ellenborough, in delivering the opinion of the court, said : "We

do not see that the plaintiff has the same security by a suit in Norway for his demand, and all the benefit of prosecuting his suit which he has here; and as we do not see that such is the case, we do not feel ourselves warranted in taking from him the benefit he is entitled to from the law of this country." The current of authority is in accordance with that decision. The cases on this subject may be seen in *Hatch* v. *Spofford*, 22 Conn. 496; *Williams* v. *Ayrault*, 31 Bar. 667; Rorer on Inter-State Law, 145.

These authorities are decisive of the question so far as the pending litigation in the Mississippi courts is concerned.

The decision of the learned judge of the chancery court is, however, placed upon a somewhat broader and higher ground. In his opinion he declares that with respect to the assets brought into Virginia by Richard Morriss, he or his estate is accountable here; but as the estate, real and personal, out of which the legacy was to be raised is situate in Mississippi, the claim of Morriss, as executor, must account for the proceeds according to the laws of Mississippi, the place of the testator's domicil; and so long as these proceeds remain there he is accountable only to the tribunals of that State. No court can lawfully interfere with the exclusive jurisdiction of the tribunals of the testator's domicil.

At the time this opinion was delivered, Judge Fitzhugh was under the impression that Richard Morriss had qualified as executor of Christopher Morriss in Mississippi. This was, however, a mistake, as Mr. Morriss never qualified as executor. The learned judge subsequently ascertained and corrected the error. It did not, however, cause him to change his opinion on the subject, for he still held that Richard Morriss' estate could not under the circumstances be held accountable in Virginia for his acts as trustee in Mississippi.

It may be conceded that as a general rule a suit cannot be maintained against an executor or administrator in the courts of any country other than that from which he derives his authority. To that court alone he is accountable for his faithful administration of the assets according to the laws there in force, and it would be unjust to require him to answer elsewhere. Besides, the authority may be needed for domestic creditors, who have the right to object to any transfer until their demands are satisfied. But there are several exceptions to this rule recognized in this State, as may be seen by reference to the cases of *Tunstall* v. *Pollard*, 11 Leigh, 29, and *Powell* v. *Stratton*, 11 Gratt. 792.

In the latter case, a citizen of Virginia, who had qualified as administrator in Mississippi, was held accountable here, although the effects were not brought into this State, mainly upon the ground that the bill alleged fraud and the want of proper defence on the part of the administrator. All the parties resided here, and it did not appear there were any creditors in Mississippi interested in the property belonging to the intestate, or that the subject matter of controversy was affected by laws peculiar to that State. These and other authorities which may be cited show there is no inflexible rule on the subject. It is not so much a question of jurisdiction as of sound judicial discretion, depending in a great measure upon the equities of the case as presented to the court. *Harvey* v. *Richards*, 1 Mason Re. 409; *Moses* v. *Hart*, 25 Gratt. 795.

It is, however, unnecessary to discuss that question, for the rule laid down by the learned judge with respect to foreign executors and administrators does not necessarily apply to trustees in a case like the present. Mr. Morriss did not qualify as trustee in the courts of Mississippi, nor did he give any bond there for the faithful discharge of his duties. He derived his appointment from the will of Christopher Morriss, and he voluntarily assumed the execu-

tion of the trusts therein mentioned. The appellant does not seek to withdraw or subject to his demand any assets or property in the State of Mississippi. His claim is founded upon an alleged breach of duty on the part of the trustee in failing to collect the legacy due the appellant, when he had the fullest opportunity and means of so doing. The appellant resides here. Mr. Morriss lived and died a citizen of Virginia; his property is here; his executors qualified in a Virginia court, and are residents of this State. That our own tribunals have jurisdiction of the case does not, I think, admit of serious question. In *Massie* v. *Watts,* 6 Cranch. Rep. 148, Chief-Justice Marshall, in commenting upon the celebrated case of *Penn* v. *Lord Baltimore,* said : Upon the authority of this case and others to be found in the books, as well as upon general principles, in a case of fraud, of trusts or of contract, the jurisdiction of a court of equity is sustainable wherever the person can be found, although lands not within the jurisdiction of the court may be affected by the decree. The opinion of this court in *Dickenson* v. *Hoomes, adm'r,* 9 Gratt. 353, 427, affirms the jurisdiction of the chancery courts to administer relief in cases of trusts, wherever the person of the defendant can be found, in the most comprehensive terms. This doctrine rests upon the power exercised by these courts over all litigants within the court's jurisdiction, and is universally recognized in every country where our system of equity jurisprudence prevails.

It rests upon the higher ground that it is the duty of every sovereignty to protect its own citizens, and not to send them to foreign tribunals to seek that justice which it is in its own power to administer, without injury to third persons. 1 Perry on Trusts, § 72; Lead. Cases in Equity, vol. 2, part 2d, 1823 to 1832. See also *McNamee* v. *Dwyer,* 7 Paige, 242.

I do not deny there may be cases in which justice as well

as convenience may require that the suit shall be brought in the State where the trust was assumed, even though the parties reside elsewhere. But surely such cases must be very rare. It would seem, indeed, the merest mockery of justice to send a citizen of this State to a foreign tribunal for redress against another citizen of the same State. If the defendant does not choose to acknowledge personal service of process, and has no property within the limits of the foreign State, a judgment or decree against him there is a mere nullity. And even though he has estate within the jurisdiction of the foreign tribunal, the judgment or decree binds only such estate so far as it may be the subject of seizure and attachment. It is the mere proceeding in *rem,* having no extra-territorial force or obligaation against the person of the defendant.

These considerations, and others which readily suggest themselves, show the great injustice that may be done in requiring a citizen of this State to resort to a foreign tribunal for redress.

In the case before us it is suggested by the chancellor that the appellant "may litigate his rights in the suits pending in Mississippi." Those suits may, however, have been long since dismissed or settled by compromise or decree. We do not know. We have no means of ascertaining their present status or condition. The whole matter is involved in too much uncertainty and doubt to constitute the basis of judicial action and decree. But if it be conceded that these suits are still pending, we cannot say—we do not know—that the appellant can obtain there as complete and satisfactory relief as our own courts can grant him. We know nothing of the laws of Mississippi, of her rules for the administration of justice, her forms of proceeding, her statutes of limitation, or the nature and effect of the decrees and judgment rendered by her courts. Can the learned counsel for the appellees tell us whether, un-

der her statutes, a non-resident can bring a suit there against another non-resident of the State when the latter has no property in the State upon which the jurisdiction can attach? It is not pretended that Mr. Richard Morriss left any estate in Mississippi, or that his executors have any assets there. Unless, therefore, the latter choose voluntarily to enter their appearance and acknowledge service of process, it is impossible to say that the appellant could maintain a suit against them in the courts of Mississippi. Now, if such a suit could be maintained, a decree pronounced in it would be a mere nullity. The result would be that, after years of delay, of useless expense, of intolerable inconvenience, the appellant must return to Virginia and seek redress in a domestic forum. So far as the executors are concerned, clearly they would not be benefited by a suit in a distant State. It is plainly for their interest and for that of Mr. Morriss' estate that all the matters in controversy should be settled here. As was said by Chancellor Wythe in *Farley* v. *Sheppen,* Wythe Rep. p. 254: "A case can rarely, if ever, occur, the discussion of which can be so convenient."

This disposes of the main ground of controversy between the parties. There are, however, several minor points which require examination. It is insisted by the appellees that Mr. Morriss never undertook the execution of the trusts of the will so far as they related to the Mississippi estates. A sufficient answer to this is found in the fact that the bill of review distinctly avers that he did undertake the execution of these trusts, and this averment must be taken as true upon a mere application to file a bill of review, otherwise the complainant, where the application is rejected, would be deprived of an opportunity of establishing the truth of his allegations. In the second place, the learned judge of the chancery court, in the opinion already referred to, distinctly declared that Mr. Morriss had accepted the

trust, but that under the circumstances the complainant must resort to the courts of Mississippi for redress. It is clear, therefore, that the appellees cannot be heard at this stage of the proceedings to raise this issue. Their defence can only be made by answer to the bill of review in the lower court, where the whole case will be open for investigation upon the merits.

Again, it is insisted that neither the original nor amended bill assert any claim against Richard Morriss growing out of his alleged breach of trust in the management of the estate in Mississippi. It cannot, therefore, be made the ground of a bill of review.

The original bill contains a narrative of Mr. Morriss' transactions with respect to Christopher Morriss' property, real and personal. It avers that he accepted the office of trustee under the will, and it asks that all proper accounts may be taken, all proper orders and decrees may be entered, and the plaintiffs' rights established and preserved.

On the 9th of December, 1871, a decree was rendered by consent, directing the master commissioner to settle an account of the transactions of Mr. Morriss, as executor of Christopher Morriss, and as trustee under his will, and as guardian of Mrs. Davis. In the progress of this cause it was discovered that Mr. Morriss had not executed the trust of the will by raising the whole amount of the legacy of $50,000, and it was insisted that in failing to do so, he was guilty of a breach of trust in which he would be held accountable. It might be a question worthy of consideration whether all this was not a proper subject of inquiry in settling the account under the decree of 1871. Let it be conceded that it was not, and that the pleadings did not sufficiently put the matter in issue, the question arises, Was it necessary to file an amended bill distinctly averring the breach of trust on the part of Mr. Morriss? I shall not attempt to give a history of the various proceedings in the cause.

It will be sufficient to state in general terms that the question of Mr. Morriss' liability, as trustee in Mississippi, was raised before the commissioner in every conceivable form by special statements and by exceptions. It was distinctly presented in the cross-bill of Mrs. Reese. The executors, in their answers, set forth with great minuteness all the facts relating to Mr. Morriss' control, management and surrender of the property in Mississippi, and they adduced testimony bearing upon the precise points. The counsel on both sides seem to have considered the issue as squarely presented, and so thought the learned chancellor, for when he came to pass upon the question he rested this decree solely upon the ground that the matter in issue more properly belonged to the courts of Mississippi than Virginia.

And now after all the expense, and after the delay of ten years, it is urged for the first time in this court that the pleadings did not properly present an issue involving a breach of trust by Mr. Morriss in dealing with the estate in Mississippi. I think it is too late now to raise the point.

In taking accounts before commissioners in chancery questions often arise which are not the subjects of specific charges in the pleadings, and when the parties proceed with the investigation without objection on that ground, as a general rule it is too late to make the objection in an appellate court. According to the settled doctrine of this court, when an account of the transactions of a fiduciary has been ordered upon a proper bill, if additional objections to the settled *ex parte* accounts are discovered in the progress of the cause, in order to save the expense and delay of an amended bill, the plaintiff is permitted to present the matter before the commissioner, with proper specifications, in writing, and the defendant is allowed to meet it by affidavit, which has the same weight as would be given to an answer in chancery. *Corbin* v. *Mills,* 19 Gratt. 465.

And in *Chapman, Adm'r* v. *Shepherd's Adm'r*, 24 Gratt. 396, this court said: Under all the circumstances it will be productive only of expense, delay and trouble to send the cause back for the plaintiff to go through with the useless formality of amending his bill by inserting matters already investigated before a commissioner, and in respect to which the defendants have not proposed to make any defence or explanation other than they have made.   These observations apply to the present case, with the additional circumstance that the executor will be afforded an opportunity of answering the bill of review, and of putting in issue its material allegations through the alleged breach of trust. Upon the whole, my opinion is that the chancery court has jurisdiction of the case, and that the judge of that court erred in refusing to assume and exercise it.   The decree of that court must therefore be reversed, and the cause remanded to be proceeded with in conformity with the views herein expressed.

It may be well to add nothing that is here said is to be construed as even indicating any opinion upon the merits of the case.

DECREE REVERSED.