# CIRCUIT COURT OF THE CITY OF RICHMOND

Rima Ford Vesilind *et al.*

v.

Virginia State
Board of Elections *et al.*

January 29, 2016

Case No. CL15-3886

By Judge W. Reilly Marchant

The matter is before the Court on two separate issues. The first is a Motion To Stay the Proceedings filed by the Virginia State Board of Elections and its members, the Department of Elections, and Edgardo Cortés (collectively "Defendants") and the Virginia House of Delegates and Virginia House of Delegates Speaker William J. Howell (collectively "Defendant-Intervenors"). The second is a Motion To Quash Subpoenas *Duces Tecum* and Objections to Requests for Production, filed by three separate groups: Group 1 consists of Senator John S. Edwards, Senator Ralph K. Smith, Senator Richard H. Stuart, Senator Richard L. Saslaw, Senator Charles J. Colgan, Senator David W. Marsden, Senator George L. Barker, and Ms. Susan Schaar, Clerk of the Virginia Senate, (collectively "Non-Party Legislative Respondents"); Group 2 is the Defendant-Intervenors; and Group 3 includes Delegate Robert H. Brink, Delegate Kathy J. Byron, Delegate Mark L. Cole, Delegate Chris Jones, Delegate Robert G. Marshall, Delegate James P. Massie, III, Christopher Marston, John Morgan, and the

Division of Legislative Services (collectively "Legislative Non-Parties"). Those document requests and subpoenas generally seek documents and communications related to the compactness, population, contiguity, creation, prioritization, and implementation of criteria considered by the legislature in their 2011 redistricting efforts.

The responding parties have all objected to production of the requested information citing legislative privilege. Secondarily, they cite the requests as being overly broad and unduly burdensome, but the Court finds that objection has not been sufficiently argued or demonstrated, and, therefore, the Court denies the Motions To Quash to the extent they are based on being overly broad and or unduly burdensome.

The matter was argued before the Court on January 7, 2016, after extensive briefing. Additional submissions were made to the Court on or about January 14, 2016. After consideration of all the arguments of counsel, as set forth both in the written submissions and through oral argument, the Court finds as follows.

## I. *Analysis*

### A. *Motion To Stay*

The Plaintiffs in this case challenge the constitutionality of the 2011 Virginia General Assembly redistricting plan and allege that six Senate districts and five House of Delegates districts fail to meet the compactness requirement of Article II, Section 6, of the Constitution of Virginia.

The Defendants and Defendant-Intervenors now move for a stay of the proceedings until resolution of the appeal of *Bethune-Hill et al. v. Virginia State Board of Elections et al.*, 3:14-cv-00952 (E.D. Va. 2014), to the Supreme Court of the United States (hereinafter "federal litigation").

Both parties agree to the five factor analysis of a motion to stay: (1) identity of the parties; (2) identity of the issues; (3) time of filing; (4) promotion of judicial efficiency; and (5) prejudice to either party. *See Davis v. Morriss' Ex'ors*, 76 Va. 21 (1881); *Gebrekidan v. Riley*, 74 Va. Cir. 215, 216 (Alexandria 2007) (citing *Potomac Savings Bank, F.S.B. v. Lewis*, 25 Va. Cir. 184 (Fairfax 1991)); *SettlementRoom L.C. v. Certified Environments, Inc.*, 67 Va. Cir. 69, 73 (Fairfax 2005). Consequently, the Court will so analyze the Motion.

### 1. *Identity of the Parties*

The Defendant and Defendant-Intervenors are identical in both the case at hand and the federal litigation. However, the Plaintiffs are different in each case because the challenged districts are dissimilar; thus, the Plaintiffs residing in those districts are not identical. Therefore, the Defendants and Defendant-Interveners fail to establish that all parties are identical.

### 2. *Identity of the Issues*

Defendants allege that the Complaint in the federal litigation requests nearly identical relief to that requested by the Plaintiff in the case at hand. However, Defendants skirt the fact that different legislative districts are challenged in both cases and the cases rely on different legal bases. The Plaintiffs in the federal litigation challenge only certain House of Delegates districts, while certain House *and Senate* districts are at issue before this Court. No district at issue in the federal litigation border a challenged district in the current proceeding, and only one district is located in the same region as a federal challenged House district.

As to the actual issues before the Court, the Plaintiffs in the federal litigation challenge the constitutionality of House of Delegates districts under the Equal Protection Clause of the United States Constitution. However, in the current case, the Plaintiffs challenge state House and Senate districts on compactness grounds under Article II, Section 6, of the Constitution of Virginia. It is clear that the federal litigation and the state litigation examine different issues of law.

### 3. *Time of Filing*

It is clear that the federal action was filed first and is at an advanced stage. *See Turner Sculpture, Ltd. v. Geographics, Inc.*, 51 Va. Cir. 178, 179 (Accomack 2000). Defendants argue that, because the federal litigation is at such an advanced stage, it is a relevant consideration for the Court in ruling on the Motion To Stay. *See id.* In support of their argument, Defendants and Defendant-Intervenors assert that the federal litigation "has involved significant judicial and state expense, including extensive discovery and the retention of a number of expert witnesses." Def.'s Joint Motion at ¶ 7. The Court agrees that the federal litigation is at an advanced stage compared to the case before this Court. However, while the extensive discovery and the experts retained in the federal case may have some overlap with the current litigation, the issues and districts are completely different. The discovery in this case will have a different focus in the House districts, and will be completely new in the Senate districts. As a result, the Court does not attach much weight to this factor as it relates to Defendants' and Defendant-Intervenors' argument.

### 4. *Promotion of Judicial Efficiency*

Defendants argue that staying the proceeding will promote judicial efficiency in case the Supreme Court of the United States overturns the District Court's decision. However, Defendants speculate that an unfavorable decision in the Supreme Court "may ameliorate or at the very least change the alleged compactness violations the Plaintiffs claim here." Def.'s Joint Motion at ¶ 9. The districts challenged in the federal

litigation are completely different from the districts at issue in the present case, and only one of those districts is located in the same region as a district challenged in the federal litigation. Nevertheless, Defendants argue that "any federally mandated redistricting may nonetheless alter material facts relevant to the present case." Def.'s Joint Motion at ¶ 10. The Court finds that such speculation is not an appropriate basis on which to order a stay. There is no way to predict what or when the Supreme Court of the United States will act on the federal litigation, and such uncertainty does not support a stay.

### 5. Prejudice

Defendants argue that any prejudice to the Plaintiffs as a result of a stay of the proceedings will be minor, while a denial of a stay would significantly prejudice the Defendants. Defendants first contend that the Plaintiffs will not be prejudiced because the Plaintiffs will still be able to pursue the matter in advance of the 2017 General Assembly elections. The Court, however, disagrees with the Defendants. The Supreme Court, as the Defendants note, has yet to consider the federal litigation or set a briefing schedule. By denying Defendants' Motion To Stay, Plaintiffs will have a likelihood of a final decision in this matter before the 2017 General Assembly elections, but, by granting the Motion, the Plaintiffs may well not have any final resolution before the 2017 elections.

Defendants further argue that, if the Supreme Court reverses the United States District Court's decision, the Defendants and Defendant-Intervenors will be forced to engage in duplicative discovery and pay expert witnesses to analyze the challenged districts for a second time. Furthermore, Defendants and Defendant-Intervenors contend that the duplicative discovery will take place during the lead-up to a presidential election, thus hindering their role in "ensuring the uniformity and legality of elections." Def.'s Joint Motion at ¶ 13. Nevertheless, denying the stay will allow the Defendants to engage in discovery herein long before the presidential election takes place. Similarly, speculating that the Supreme Court's decision will be unfavorable to the Defendants, and that such a decision will impact entirely different districts, is not enough for the Court to find that the Defendants will be prejudiced by denying the Motion To Stay.

In conclusion, for all of the reasons set out above, the Court denies the Motion To Stay the Proceedings.

### B. Motion To Quash

In analyzing the scope and application of the legislative privilege asserted, the Court has reviewed both state and federal law, as the "[Virginia] and federal immunities are very similar in their wording [, and] they appear to be based upon the same historical and public policy considerations." *Board*

*of Supervisors of Fluvanna Cnty. v. Davenport & Co., L.L.C.*, 285 Va. 580, 586 (2013) (quoting *Greenburg v. Collier*, 482 F. Supp. 200, 202 (E.D. Va. 1979)); *see also Lee v. Virginia State Bd. of Elections*, No. 3:15CV357, 2015 U.S. Dist. LEXIS 171682, at 11 (E.D. Va. Dec. 23, 2015). The results of that analysis make clear that the legislative privilege applies absolutely to purely internal legislative communications solely among legislators and between legislators and their legislative staff. *North Carolina State Conf. of the NAACP v. McCrory*, No. 1:13CV658, ECF No. 207, Slip Op. at 5–15, 2014 U.S. Dist. LEXIS 185130 (M.D. N.C. Nov. 20, 2014); *see also Gravel v. United States*, 408 U.S. 606 (1972). This central core of the legislative privilege has been thoroughly discussed by all persuasive authorities, and the parties agree as to this core aspect of the privilege. However, the parties do not agree as to how much broader, if any, the privilege extends and who else falls within its protections.

With one exception, the Court declines to extend the privilege beyond that core definition cited above, and finds that the individuals included within the legislative privilege are only the legislators and their legislative assistants and/or aids who are employed and paid by the individual legislator, a legislative committee, or the legislature as a whole. *Page v. Virginia State Bd. of Elections*, 15 F. Supp. 3d 657, 664 (E.D. Va. 2014). The one exception and addition to that definition is communications between the legislators (including their paid staff) and the Virginia Attorney General's office regarding preclearance of the redistricting plan. Despite the fact that the Attorney General is part of the executive branch, its role in advising and advocating changes to the district map brings the Attorney General under the umbrella of the legislative privilege. *See, e.g., Supreme Court of Virginia v. Consumers Union of United States*, 446 U.S. 719 (1980); *Bogan v. Scott-Harris*, 523 U.S. 44, 47 (1998); *McCray v. Maryland Dep't of Transp., Md. Transit Admin*, 741 F.3d 480, 485–86 (4th Cir. 2014).

The Supreme Court of Virginia has cited some examples of activities that fall within the protected "sphere of legitimate legislative activities," and, therefore, are privileged: "delivering an opinion, uttering a speech, or haranguing in debate; proposing legislation; voting on legislation; making, publishing, presenting, and using legislative reports; authorizing investigations and issuing subpoenas; and holding hearings and introducing material at Committee hearings." *Davenport*, 285 Va. at 589 (quoting *Fields v. Office of Johnson*, 459 F.3d 1, 10–11 (D.C. Cir. 2006)). Conversely, the Supreme Court of the United States has enumerated a number of activities that do not fall within the protected "sphere of legitimate legislative activities," "include[ing] a wide range of legitimate 'errands' performed for constituents, the making of appointments with Government agencies, assistance in securing Government contracts, preparing so-called 'news letters' to constituents, news releases, and speeches delivered outside the Congress." *United States v. Brewster*, 408 U.S. 501, 512 (1972). While

neither of those enumerations is meant to be an exhaustive list, they are instructive.

Applying the privilege, as defined above, to the individuals objecting to the discovery requests herein results in the following holding. Group 1, the Non-Party Legislative Respondents (other than Ms. Susan Schaar, Clerk of the Virginia Senate, who the parties all agree has no duty to respond) and Group 3, the Legislative Non-Parties (other than Christopher Marston, John Morgan, Delegate Chris Jones, and the Division of Legislative Services, all of whom will be individually addressed below), shall answer all the discovery at issue, but such responses shall be limited and protected by the scope of the privilege as defined above. As to Christopher Marston, John Morgan, Delegate Chris Jones, and the Department of Legislative Services, the Court finds as follows:

### 1. *Christopher Marston and John Morgan*

As to Christopher Marston and John Morgan, the Court notes that the "party asserting [a] privilege has the burden of demonstrating its applicability." *Page*, 15 F. Supp. 3d at 661 (quoting *N.L.R.B v. Interbake Foods, L.L.C.*, 637 F.3d 492, 501 (4th Cir. 2011)); see also, e.g., *Virginia Elec. & Power Co. v. Westmoreland-LG & E Partners*, 259 Va. 319, 325 (2000) (citing *Commonwealth v. Edwards*, 235 Va. 499, 510 (1988)) ("The party seeking to assert the attorney-client privilege bears the burden of persuasion on the issue.") In regard to Morgan and Marston, the Court heard no evidence in this case as to their status or role. The Court assumes from the briefs of counsel that they both are political consultants to the House Republican caucus and/or the House Republican campaign committee as set out in detail by Judge Payne in the *Page* case. However, in light of the burden of proof set out above and in light of the scope of the privilege defined above, the Court finds that neither Morgan nor Marston have established any basis for assertion of legislative privilege, and, therefore, they must comply with the discovery requests herein. That would include any communications from legislators because any such communications would not be internal to the legislature, and neither Morgan nor Marston fall within the privilege and are considered third parties.

### 2. *Delegate Chris Jones*

As to Delegate Chris Jones, since he does fall within that class of individuals who could normally assert the privilege, the central issue regarding Delegate Jones is one of waiver. Has Delegate Jones waived his otherwise applicable legislative privilege by virtue of his testimony in the *Bethune-Hill* case? The Court notes that the burden of proof regarding such waiver is on the proponent of the privilege, as the proponent has the burden

to establish that the privilege was not waived. *See Walton v. Mid-Atlantic Spine Specialists, P.C.*, 280 Va. 113, 122–23 (2010).

Delegate Jones testified extensively before the three-judge District Court panel in *Bethune-Hill*. The opinion in that case reveals that, in the 2011 Virginia state redistricting process, Delegate Jones lead the effort in the House and played an instrumental role in the entire redistricting process. *Bethune-Hill v. Virginia St. Bd. of Elections*, 2015 U.S. Dist. LEXIS 144511, at 7 (E.D. Va. Oct. 22, 2015). The transcript of Delegate Jones's testimony in *Bethune-Hill* has been reviewed by the Court. Delegate Jones testified extensively about the state legislative redistricting process, including but not limited to: the consideration of population equality (ideal population per district 80,010); geographic limitations and boundaries; requests and desires of individual members; communities of interest; avoiding unnecessary pairing of incumbents; how districts fit together; the Voting Rights Act; black voting age population per district; population deviation criteria; census data; use of map drawing software; preclearance of the Department of Justice; compactness; the House Committee on Privileges and Elections criteria for redistricting; district election history; and voter registration and turnout. Delegate Jones's testimony was extensive, regarding practically all aspects of the 2011 redistricting. It is hard to imagine how there would be any area of that redistricting process that he did not touch on, either directly or indirectly, and for that reason the Court finds that he has undertaken a pervasive waiver of the privilege on the entire redistricting process as a subject matter waiver. As a result, he is required to comply with the discovery requests herein. *See Weil v. Investment/Indicators, Research and Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981); *Commonwealth v. Edwards*, 235 Va. 499 (1988); Va. Code § 8.01-420.7(A).

To the contrary, Respondents cite *Greenburg v. Collier*, 482 F. Supp. 200 (E.D. Va. 1979), in arguing that Delegate Jones did not waive his legislative privilege. But *Greenberg* is distinguished in that the affidavit filed by Delegate Axselle in that case and upon which the issue of waiver was considered was hardly equivalent to the vast and extensive testimony of Delegate Jones in *Bethune-Hill*. Furthermore, in *Greenburg*, the plaintiffs were seeking to discover information relevant to Delegate Axselle's motivation for the legislation in question, and the law is clear that a legislators' motivation is not a proper factor to consider in determining the legitimacy of a legislative act. *Davenport*, 285 Va. at 591; *Watkins v. United States*, 354 U.S. 178 (1957); *Brewster*, 408 U.S. at 525; *Covel v. Town of Vienna*, 78 Va. Cir. 190 (Fairfax County 2009).

### 3. *Division of Legislative Services*

As to the Division of Legislative Services ("DLS"), it is a legislative agency that serves legislators individually and collectively, but it is not a legislator, a legislative committee, or the legislature as a whole, and it is

not a paid employee of any of the above. Therefore, DLS does not fall within the scope of this Court's definition of the legislative privilege and cannot invoke the privilege. Consequently, DLS shall answer the discovery propounded herein. Certainly, this includes all communications between DLS and legislators or their paid aids or staff, as well as documents or communications among DLS staff or between DLS staff and others.

If DLS was involved in the Attorney General's Office legislative preclearance process with the DOJ, then that issue would have to presented and argued to the Court, but there was no such evidence or argument put before the Court in the two hours of oral argument on January 7, 2016.

### 4. *Defendant-Intervenors*

As to Group 2, the House of Delegates as a whole, and Speaker of the House William J. Howell, ("Defendant-Intervenors"), they would have enjoyed the protections of legislative privilege, except for the waiver of that privilege by their voluntary intervention and Answers herein. *Davenport*, 285 Va. at 590. In *Davenport*, the Supreme Court of Virginia found that the Board of Supervisors of Fluvanna County had effectively waived the protection of legislative immunity by an "explicit and unequivocal renunciation of the protection." *Id.* at 589 (quoting *United States v. Helstoski*, 442 U.S. 477, 491 (1979)). The Court found that the board had done so by "(1) declining to assert legislative immunity, (2) voluntarily filing a complaint that, due to the Board's burden of proof, involves issues protected by legislative immunity, and (3) making an unequivocal waiver of protection from inquiry into legislative motivation in the text of its complaint." *Id.*; *see also May v. Cooperman*, 578 F. Supp. 1308, 1317 (D. N.J. 1984). Similarly here, the Defendant-Intervenors have purposefully and directly interjected themselves into this litigation by filing a Motion To Intervene "for the purpose of participating in the disposition of the proceeding," and stating further that they are "necessary parties," with "vital interests germane to the subject of the litigation," and that they actually "drew and enacted the challenged redistricting and have a substantial interest in defending it," and that they intend to present evidence. Motion To Intervene at 1–3. Further, Defendant-Intervenors filed Answers revealing various aspects of the redistricting process. *See* Answer of Defendant-Intervenors. The Court finds that this purposeful intervention into this lawsuit is no different than those entities found to have waived legislative privilege in *Davenport* and *May*. Consequently, Speaker William Howell has waived his individual legislative privilege and shall, therefore, answer the requested discovery.

However, as to the House of Delegates itself, to the extent the House is merely a repository for communications and documents of individual legislators or committees, or their paid staff or aids, the House cannot waive the legislative privilege of those legislators. *Marylanders for Fair Representation v. Schaefer*, 144 F.R.D. 292, 298 (D. Md. 1992); *A Helping*

*Hand, L.L.C. v. Baltimore Cnty,* 295 F. Supp. 2d 585 (D. Md. 2003). Consequently, any such documents on file or stored by the House shall not be revealed.

## II. *Conclusion*

For all the reasons set out above, the Court denies the Motions To Quash to the extent they are based on being overly broad and or unduly burdensome. However, as to the claimed legislative privilege, the Court orders Group 1, the Non-Party Legislative Respondents (other than Ms. Susan Schaar), and Group 3, the Legislative Non-Parties (other than Christopher Marston, John Morgan, Delegate Jones, and DLS), shall answer all the discovery at issue, but such responses shall be limited and protected by the scope of the privilege as defined herein; the Court denies the Motion To Quash of Christopher Marston and John Morgan as they fall outside the scope of the legislative privilege, and, therefore, the Court orders them to answer the Plaintiff's discovery requests; further, the Court denies the Motion To Quash as to Delegate Chris Jones because he waived his legislative privilege through his extensive testimony in the *Bethune-Hill* proceeding, and, therefore, the Court orders Delegate Chris Jones to respond to Plaintiffs' discovery requests; the Court denies the Motion To Quash of DLS as it also falls outside the legislative privilege and orders that it comply with the discovery requests; and, lastly, the Court denies the Motion To Quash of the Defendant-Intervenor House Speaker Howell because he waived his right to assert the legislative privilege by intervening in this suit and orders that Speaker Howell comply with the discovery request. Regarding the House being merely a repository of legislative documents, to that extent, the House Motion To Quash is granted.