H. D. REED, G. H. SHERWOOD, C. M. TREPHAGEN, C. BISHOP, J. N. HOSIER, J. N. SHANHOLZER, F. H. REED, Stockholders in a corporation organized under the laws of Colorado, known as the Main Gulch Mining, Milling and Transportation Tunnell Company, who bring this action in their own behalf and in behalf of all stockholders similarly situated, and in behalf of said Corporation, Appellants, v. ALBERT E. HOLLINGSWORTH, OZIAS WALKER, ELMER A. JOHNSON, FRED C. MCMILLAN, WILLIAM C. CATREN, and the HOLLINGSWORTH MINING COMPANY, Appellees.

**Corporations:** ACTION BY STOCKHOLDERS: CONDITION PRECEDENT: DEMAND. Stockholders of a corporation may prosecute an action on their own behalf and that of other stockholders similarly situated against the officers, directors or other stockholders, who are seeking by fraud, misfeasance or unlawful acts to do injury to the corporation or its stockholders; but as a general rule they must first demand of the managing officers that they bring the action, unless such demand would be futile, as where these officers are themselves guilty of the fraud or misfeasance charged.

**Same:** RECEIVERS: PARTIES. Ordinarily the local receiver of a corporation is the proper party to bring an action on behalf of the stockholders and demand should be made on him to do so

before the stockholders act, but if his appointment was fraudulent and a part of the scheme to defraud the stockholders no such demand is necessary; and if the property which is the subject of litigation has never come into the hands of the receiver, but has at all times remained with the corporation and its officers, the receiver is not a necessary party to the stockholders' action.

**Same:** FOREIGN RECEIVERS. The receiver of a corporation appointed by a foreign court, never having been appointed in this state, can not sue or be sued here, and is not a necessary party, nor is a demand on him to bring suit necessary before the institution of an action by the stockholders; and even if a proper party, the court having jurisdiction of the other defendants, could proceed and award any appropriate relief. For like reasons the stockholders are not compelled to go into the foreign courts for leave to sue the receiver, or to secure an order for him to bring the action.

**Same:** PARTIES. The corporation is not a necessary party plaintiff to a stockholders' action against the directors; and a failure to serve the corporation with notice when made a defendant is not ground for demurrer because of defect of parties.

**Same:** ABATEMENT OF ACTIONS: ANOTHER ACTION PENDING. As a general rule the pendency of an action in a foreign state can not be pleaded in bar of an action in this state; and this is especially true where, as in this case, the foreign action was part of a scheme to defraud the stockholders of a corporation, and was the basis of their action against the directors.

**Injunction:** RESTRAINING ACTION IN ANOTHER STATE. Injunction will lie to restrain residents of this state from prosecuting fraudulent, collusive or unlawful proceedings in the courts of another state.

**Same:** JURISDICTION. The fact that real property of a corporation located in another state is incidentally involved in a stockholders' action against the directors for fraud will not deprive the courts of this state of jurisdiction.

**Pleadings:** DEMURRER. Matters of defense need not be negatived in the petition; and if there be a cause of action stated against any of the defendants the petition is not subject to demurrer.

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

THURSDAY, MARCH 14, 1912.

ACTION by certain stockholders in a mining corporation to set aside the declaration of forfeiture of certain contracts which the mining company had purchased from one Catren, to set aside a conveyance thereof, thereafter made by Catren, to enjoin the defendants or some of them from prosecuting certain actions against the mining company in the state of Colorado, to require them to account for the proceeds of certain ore which came into their possession, and for judgment against the defendants, and for other equitable relief. A temporary writ of injunction was issued as prayed, which was thereafter dissolved upon motion. Defendants, other than Catren, appeared and demurred to the petition. This demurrer was sustained, and judgment was entered dismissing plaintiffs' petition and taxing the costs to them. They appeal.—*Reversed.*

*Clinton L. Nourse,* and *Hager & Powell,* for appellants.

*Read & Read,* and *Guernsey, Parker & Miller,* for appellees.

DEEMER, J.—The facts must be gathered from the allegations of the petition, as the demurrer admitted all such facts as were properly pleaded. From the statements of the petition we extract the following, deemed material to a determination of the case:

The Main Gulch Company was organized in March, 1906, as a private corporation for pecuniary profit, under the laws of the state of Colorado, for the purpose of locating, purchasing, and operating mines and mining property. The principal place of business of the Main Gulch Company, as stated in the articles of incorporation, was Silver Plume, Colo.; but provision was therein made for the maintenance of offices at such other places as might be deter-

mined. . . . The affairs of the Main Gulch Company were to be managed by a board of five directors, and in April, 1908, the individual defendants, Albert E. Hollingsworth, Ozias Walker, Elmer A. Johnson, and Fred C. McMillan, and one George A. Huffman, were elected directors of that company, of whom Hollingsworth was made president; McMillan, vice-president; and Johnson, treasurer. And said persons continued as such officers and directors of the Main Gulch Company from the time of their election down to and including the times of the happening of all of the matters complained of. All of said officers resided in the state of Iowa, and most of them in the city of Des Moines, Iowa. After the organization of the Main Gulch Company, its capital stock was placed upon the market and sold to many persons, including plaintiffs; plaintiffs in that manner becoming the owners severally of shares of stock aggregating about 98,500 shares.

In March, 1906, with the approval of the probate court defendant William C. Catren, as administrator of the estate of B. C. Catren, sold, by written contract and lease, to one Chauncey I. Burt a large amount of valuable mining property described in the petition for the sum of $35,000, and in May, 1906, Burt sold and transferred the said contract and lease to the Main Gulch Company, and conveyance of the property and assignments of the lease were duly executed by Catren, administrator, to Burt, and by Burt to the Main Gulch Company, and these conveyances and assignments duly executed were deposited in a bank in Georgetown, Colo., in escrow as provided in the contracts of sale and assignment. By the terms of the said instruments, there were to be paid to Catren, administrator, $10,000 on or before March 31, 1907, $10,000, on or before March 31, 1908, and $15,000 on or before March 31, 1909. Said instruments also required that 17½ percent of all ore mined from the property should be paid to Catren, administrator, and be by him credited upon the last of the above payments of the purchase price. The Main Gulch Company immediately entered into the operation and development of said mines and mining property, and continued so down to the time of the surrender of possession of the property by Hollingsworth to Catren as hereinafter stated, and the Main Gulch Company also paid Catren,

administrator, the $10,000 due March 31, 1907, and also 17½ per cent of the proceeds of the ore taken by it from said mines.

In February, 1908, the time for the payment of the remainder due upon said contract was, by a supplemental agreement, extended as follows: $2,000 to be paid March 31, 1908; $2,000, September 30, 1908; $1,000, January 31, 1909; $5,000, March 31, 1909; $3,000, September 30, 1909; and the remaining $12,000, less such sums as had been received from the 17½ per cent of the ore mined, March 31, 1910. After the extension, the Main Gulch Company paid to Catren, administrator, the $2,000 due in March, 1908, and 17½ per cent of the proceeds of the ore meanwhile mined, so that on September 30, 1908, all of the said purchase price of the said mine had been paid except the sum of $20,225.94, of which remaining sum the first installment was $2,000 payable September 30, 1908.

The contracts between Catren and Burt and between Burt and the Main Gulch Company and the extension agreement between Catren and the Main Gulch Company each provide for a declaration of forfeiture, upon failure to make payments, of which ten days' written notice shall be given; but the plaintiffs and the other stockholders of the Main Gulch Company (prior to the happening of the things hereinafter stated) had no accurate information of the terms of the said contracts in relation to the forfeiture or the times when payments became due. Cognizant of the want of information of the plaintiffs and of the other stockholders of the Main Gulch Company, and just prior to the time the first remaining payment became due, September 30, 1908, the defendant Hollingsworth, president of the Main Gulch Company, had a conversation with some of the plaintiffs and other stockholders of the Main Gulch Company for the purpose of arranging for any future payments that might become due Catren, and the plaintiffs and other stockholders relied upon these statements and representations of Hollingsworth and believed that arrangements had been made or would be made by the officers of the Main Gulch Company for such remaining payments. From the time of the purchase of the property by the Main Gulch Company, down to about the 30th of September,

1908, it was represented by the individual defendants, officers of the Main Gulch Company, to various stockholders of that company, including the plaintiffs or some of them, that the said mines were producing large quantities of valuable ore, assaying in the neighborhood of $54 per ton and in excess thereof over and above smelter and transportation charges, and the plaintiff and other stockholders were thereby led to believe, and did believe, that the property was producing such an income as would then, or in the near future, pay the indebtedness of the company to Catren and also produce a profit to them as stockholders.

No meeting of the stockholders of the Main Gulch Company was called by the defendant Hollingsworth as he had represented, or by any other person, for the purpose of arranging for any of said payments or considering the same, but on or about the said 30th day of September, 1908, the defendants Hollingsworth, Walker, Johnson, McMillan, and Catren entered into a conspiracy for the purpose of defrauding the Main Gulch Company and its stockholders, including plaintiffs, of said mines and mining property and depriving them of all their interests and rights therein, by having Catren, administrator, declare a forfeiture of the said contract and lease and thereafter sell the said property to the individual defendants for the said remainder of the consideration, $20,225.94, due Catren, administrator, from the Main Gulch Company. In pursuance of the conspiracy, Hollingsworth went to Silver Plume, Colo., about September 30, 1908, the date the first payment fell due, and on the 3d of October, 1908, Catren, administrator, presented to Hollingsworth, at Silver Plume, a notice directed to the Main Gulch Company, stating that he, Catren, administrator, did elect to declare and did thereby declare a forfeiture of the said contracts of purchase. Upon the presentation of that notice, Hollingsworth accepted the service for the Main Gulch Company and without right and without further notice, and without the knowledge of the plaintiffs or any of the stockholders of the Main Gulch Company, other than the defendants, and without awaiting the ten days provided for by the contracts, and in violation of the terms thereof, Hollingsworth upon said notice immediately surrendered all of said mines and mining property to Catren.

On October 3, 1908, Catren, as administrator of the estate of B. C. Catren, made a report to the probate court of Clear Creek county, Colo., that he had served notice of forfeiture upon the Main Gulch Company, and that the company had surrendered possession of the mines and mining property to him; but that report was not filed in said court by Catren, administrator, nor did it become a matter of public record until about the 23d day of November, 1908. On November 30, 1908, an order was entered by said probate court in said estate, reciting that the contracts with Burt and the Main Gulch Company had been forfeited, and that the holders of said contracts had surrendered possession of the property to the administrator and authorizing the administrator to sell the said property at private sale. Immediately thereafter, and in further pursuance of said conspiracy to defraud the Main Gulch Company and its stockholders, Catren, administrator, sold all of the said mines and mining property to the individual defendants, officers of the Main Gulch Company, Hollingsworth, Walker, Johnson, and McMillan, for the sum of $20,225.94, being the remainder of the consideration due from the Main Gulch Company to Catren, administrator, under the contracts of purchase above referred to held by the Main Gulch Company. On the 8th of December, 1908, Catren, administrator, reported said sale to the probate court, and it was confirmed by that court, and on the 9th day of December, 1908, Catren, administrator, conveyed all of said mines and mining property to the said individual defendants, Hollingsworth, Walker, Johnson, and McMillan.

On the 15th day of December, 1908, Hollingsworth, McMillan, and one E. D. Smith, an employee of Hollingsworth, organized, under the laws of Colorado, the defendant corporation, the 'Hollingsworth Mining Company' for the identical purposes for which the Main Gulch Company had been organized. The articles of incorporation of the Hollingsworth Company provide that the board of directors shall consist of five members, namely, Hollingsworth, McMillan, Smith, Walker, and Wm. C. Catren, of whom Hollingsworth shall be president, Smith, secretary, and Catren, manager of the mines; and said persons are now filling said offices. The said articles of incorporation of the Hollingsworth Company also provide that the company

shall at all times maintain an office for the transaction of business in the city of Des Moines, Iowa. On the 28th day of December, 1908, the defendants Hollingsworth, Walker, McMillan, and Johnson conveyed to the defendant Hollingsworth Company, by warranty deed, all of the said mines and mining property in question, for the following consideration: $25,000 of the first mortgage bonds of the Hollingsworth Company, secured by a deed of trust upon the mines and mining property in question, 5,000 shares of the preferred stock of the Hollingsworth Company, and 7,475 shares of the common stock of the Hollingsworth Company, said shares being each of the par value of $10 and constituting all of the capital stock of the Hollingsworth Company. Said stocks aggregate the face value of $124,750, and, with said bonds, make the entire consideration, received by the defendants Hollingsworth, Walker, McMillan, and Johnson from the Hollingsworth Company $149.750. On the same day, December 28, 1908, the Hollingsworth Company executed a deed of trust to the German-American Trust Company, upon all of said mines and mining property, to secure 50 bonds, negotiable in form and character, of the denomination of $500 each, bearing interest at 6 percent per annum, payable December 31, 1918; which said bonds were then delivered to the defendants Hollingsworth, Walker, McMillan, and Johnson and Catren, and are now outstanding. The conveyance from Hollingsworth and others to Hollingsworth Company and the deed of trust to the German-American Trust Company, above referred to, were executed and acknowledged by Hollingsworth and Smith, as president and secretary of the Hollingsworth Company, in the city of Des Moines, Iowa.

On the ——— day of March, 1909, the defendants Johnson and McMillan instituted in the district court of Clear Creek county, Colo., an action against the Main Gulch Company to recover the sum of $5,000 indebtedness claimed to be due them, and alleging in said suit that the Main Gulch Company was insolvent, and praying the appointment of a receiver. The only notice ever given of that suit was served upon a stockholder of the Main Gulch Company, unknown to the plaintiffs; the said stockholder so served being in collusion with the defendants in the commencement of that suit. No appearance was entered in

said suit for the Main Gulch Company, and no defense was made therein for that company by Hollingsworth as president or by any of the other defendants, officers of that company, or by any other person, although said officers all knew that said suit was to be brought and had full knowledge of the bringing thereof and its pendency, but concealed such facts from the other remaining director and from the plaintiffs and the stockholders of the Main Gulch Company, and permitted a default to be taken therein and a receiver to be appointed upon said application of Johnson and McMillan by that court, on or about April 10, 1909. Said receiver has never at any time taken or attempted to take possession of, or claimed any of, the property of the Main Gulch Company but the said property has always remained, as it was at the time said suit was commenced, in the possession and under the control of Hollingsworth Company, and said mines and mining property have been and are now being operated by the Hollingsworth Company, through its officers, the individual defendants herein.

On April 13, 1909, the defendant Hollingsworth Company instituted in the district court of Clear Creek county, Colo., a suit against the Main Gulch Company, asking to quiet the title of the Hollingsworth Company to the mines and mining property in question. Notice of said suit was served upon John B. Lucas, a stockholder of the Main Gulch Company, at Georgetown, Colo., on the 13th day of April, 1909, at 9 o'clock p. m., as said Lucas was about to leave the state of Colorado. Said latter suit, however, was commenced after notice of the instant suit had been served upon some of the individual defendants herein and after the officers of the Hollingsworth Company had knowledge and had been notified of the commencement of this suit.

The same firm of attorneys who represented Catren, administrator, in the attempt to forfeit the contracts of purchase of the Main Gulch Company, also represented Johnson and McMillan in the suit for the appointment of a receiver and also represents the Hollingsworth Company in its suit to quiet title, and said attorneys, as plaintiffs are informed and believe, represented Hollingsworth, Walker, Johnson, and McMillan in the organization of the Hollingsworth Company, and said attorneys have since, at

all times, represented the defendants in all of the proceedings relating to the said property and at the meeting of the stockholders of the Main Gulch Company hereinafter referred to.

After notice had been served of the instant suit and on the 13th day of April, 1909, a meeting of the stockholders of the Main Gulch Company was held at the instance of the defendants, officers of the Main Gulch Company, at Silver Plume, Colo. Defendants were represented at said meeting by their attorneys, being the same attorneys who appeared for the defendants in all of the proceedings hereinbefore referred to, at which meeting an election of directors was held; but the defendants by their attorneys protested said election and have declared that under the laws of the state of Colorado no proper election was had, and that said new board of directors was not entitled to. act as directors and have wholly ignored said board of directors and denied their right to act, claiming that at said meeting the defendants represented a majority of all the stock of the Main Gulch Company and a majority of all the stock there present, and that said new directors had not been voted for or elected by a majority of all the stock there present. Said new board of directors has never been organized or qualified or acted for said company.

The defendants, officers of the Main Gulch Company, have always been in control of said company during all of the said transactions and have endeavored to conceal and have concealed all of said transactions from plaintiffs and the stockholders of the Main Gulch Company, other than defendants, and each and all of the said transactions above set out and referred to were had and done by the defendants in furtherance of their conspiracy to defraud plaintiffs and the other stockholders of the Main Gulch Company, and for the purpose of depriving said company and its stockholders other than the defendants of all beneficial interest in said mines and mining property. The said mines and mining property so attempted to be taken from the Main Gulch Company are worth a sum in excess of $150,000, and are and were worth more than $100,000 over and above all of the indebtedness and liabilities of the Main Gulch Company. The mining

property immediately adjoining the property in question has produced from $10,000,000 to $30,000,000.

The Hollingsworth Company, ever since its pretended purchase of said property, has been engaged in operating said mines and in taking ore therefrom and is now engaged in taking ore therefrom; said ore being of great value, and the amount thereof being now unknown to plaintiffs. . . . Plaintiffs and the other stockholders of the Main Gulch Company have, at all times, been ready and willing and are now ready and willing to do all things necessary to conserve and protect the rights of the Main Gulch Company in and to said property and the said Catren contracts and to do equity in the premises. The articles of incorporation of the Main Gulch Company make no provision for the calling of special meetings of the stockholders thereof.

Plaintiffs in their petition pray for themselves, and other stockholders of the Main Gulch Company: That the pretended declaration of forfeiture above referred to be declared void, that the defendants Hollingsworth, Walker, Johnson, McMillan, and Catren, and the Hollingsworth Mining Company, be decreed to hold said mines and mining property and all parts thereof and the proceeds therefrom as trustees for the benefit of the Main Gulch Company and its stockholders. That they be required to account for said property and each and every parcel thereof and for all ore taken from said mines, and that, if any of the said property has been disposed of or expended or destroyed, that judgment be rendered against defendants for the full value thereof. That a temporary injunction issue to restrain the Hollingsworth Company and its officers and the individual defendants from prosecuting said suits and from instituting and prosecuting further suits, and for general equitable relief. And in the alternative plaintiffs pray judgment against all of the defendants except the Main Gulch Company, for damages suffered, to the sum of $150,000 and interest.

As already indicated, while Catren was made a party to the proceedings, he was not served with notice, and it also appears that neither the Main Gulch Company nor its receiver were served with notice, nor was the receiver

made a party.   The main points made by defendants in their demurrer were that:

(1) Plaintiffs have no right to sue, for the reason that a receiver had been appointed for the Main Gulch Company in the state of Colorado, and he alone could bring the suit.

(2) The receiver was a necessary and indispensable party to this action.

(3) The plaintiffs have no right to sue in their capacity as stockholders for the reason it does not appear that they had made any demand upon the corporation, its officers or directors, to bring the action before commencing this proceeding, and for the further reason that they made no demand upon the receiver to bring suit.

(4) The receivership proceedings pending in Colorado are a bar to plaintiffs' action.

(5) This action should be abated because of the pendency of the proceedings in the Colorado courts.

(6) The courts of this state are without jurisdiction for the reason that the action involves and is brought to recover an interest in real estate situated in a foreign jurisdiction.

(7) The matters complained of relate to the internal management of a foreign corporation, and the courts of this state have no jurisdiction to interfere therewith.

(8) Plaintiffs have not shown any wrongs to themselves individually and are not in a representative capacity entitled to any relief.

(9) Plaintiffs are not entitled to any relief for the reason that they have not offered to repay defendants for money expended by them and do not offer to do equity, and for the further reason that the Main Gulch Company is shown to be insolvent, and no allegations are made which show, or tend to show, that there would be any surplus to the stockholders after the corporate debts were paid.   This

demurrer was sustained generally, and the appeal is from this ruling.

If the demurrer was properly sustained, this, of course, ends the case; but, if error be found in that rule, then it becomes important to determine the correctness of the ruling on the motion to dissolve the temporary writ of injunction.

I.    Plaintiffs are not only suing on their own behalf, but for the benefit of all the other stockholders similarly situated, and the action is not to preserve or secure their individual rights, save as they may be incidentally involved after recovery may be had from the defendants, for and on behalf of all the stockholders. Proper preliminary steps having been taken or good reason shown why these would have been unavailing, the law authorizes such suits to be prosecuted against the officers, directors, or stockholders who by fraud, misfeasance, or unlawful acts do injury to the corporation itself or to the stockholders. As a rule demand must be made upon the managing officers to bring such action before it can be prosecuted by the individual stockholders. *Schoening v. Schwenk,* 112 Iowa, 733; *Telegraph v. Lee,* 125 Iowa, 17. But where these officers are themselves guilty of fraud, and misfeasance is charged, it is apparent that demand upon them to bring suit · against themselves would be a vain and useless thing, and in such cases no demand is necessary. See cases just cited, and *Delaware Co. v. Albany R. R.,* 213 U. S. 435 (29 Sup. Ct. 540, 53 L. Ed. 862), and 2 Morawetz on Corporations (4th Ed.) section 741. It is not necessary, of course, to make demand upon, the other stockholders, for they have nothing to do with the immediate management of the affairs of the company and could not have brought it even were they so disposed. *Brewer v. Boston Theatre,* 104 Mass. 378; *Railway Co. v. Alling,* 99 U. S. 463 (25 L. Ed.

*1. CORPORATIONS: action by stockholders: condition precedent: demand.*

438); *Delaware Co. v. Albany R. R.*, 213 U. S. 435 (29 Sup. Ct. 540, 53 L. Ed. 862).

According to defendants' own theory the property of the corporation was in the hands of a receiver, and they could not have brought suit as directors or managers, even had they been so disposed. Ordinarily a local receiver would be the proper party to bring the suit, and demand would doubtless have to be made upon him before action would lie by the stockholders; but it is charged in this petition that the suit which resulted in his appointment was covinous and fraudulent and a part of the scheme whereby the Main Gulch Company and its stockholders were to be defrauded. In such cases no demand would be necessary upon the receiver. *Brinckerhoff v. Bostwick*, 88 N. Y. 60; *Sigwald v. City Bank*, 82 S. C. 382 (64 S. E. 399); *South Spring Hill Co. v. Amador Co.*, 145 U. S. 300 (12 Sup. Ct. 921, 36 L. Ed. 712).

*2. SAME: receivers: parties.*

Moreover it is alleged that the property which is the subject-matter of the litigation has never been in the hands of the receiver, but has at all times, since the acts complained of, been in the possession of the defendants. In such cases it is not necessary to make the receiver a party. *Sigwald v. Bank, supra; State Bank v. McElroy*, 106 Iowa, 260; *Weigen v. Insurance Co.*, 104 Iowa, 411.

Moreover, as the receiver was appointed by a foreign court and has never been appointed in Iowa, he (as a general rule) would have no standing in this court under the doctrine announced in *Parker v. Lamb*, 99 Iowa, 265; *Wyman v. Eaton*, 107 Iowa, 214, and other like cases: *Schloss v. Surety Co.*, 149 Iowa, 382. This is the rule announced by the United States Supreme Court in *Booth v. Clark*, 17 How. 322 (15 L. Ed. 164), and steadfastly adhered to down to this time. Of course, authorities, and many of them, hold to a contrary doctrine, but we are not disposed to

*3. SAME: foreign receivers.*

depart from the rule so often established and so well fortified by authority.

The receiver here appointed could neither sue or be sued in the courts of this state, for his appointment had no extraterritorial effect. He was not then a necessary party, nor was it necessary to make demand upon him to bring the action.

II. Even if the receiver were a proper party, he was not an indispensable one, and the court, having jurisdiction of the other defendants, could proceed and award any appropriate relief. *Hazard v. Durant* (C. C.) 19 Fed. 476; *Teager v. Landsley*, 69 Iowa, 725.

III. For the same reasons plaintiffs were not required to go to the Colorado courts for leave to sue the receiver or to secure an order upon him to bring the action.

IV. The Main Gulch Company was not a necessary party plaintiff. This action is brought by the stockholders of the company for and on behalf of all stockholders, and in a sense the Main Gulch Company is a party. Indeed, if recovery be had, it will be for the company, although brought by the stockholders and not by the managing directors in the name of the company. Granted the right of plaintiffs to sue in their names as stockholders, it follows that the corporation itself was not an indispensable party plaintiff. Whether or not it should have been made a party defendant is another question, and one which does not properly arise upon the demurrer. The Main Gulch Company was made a party defendant by an amendment to the petition filed before the demurrer was interposed, and whilst it was not served with notice of the amendment or of the original petition, yet as it was made a party, the petition and its amendment are not subject to demurrer because of defect of parties. This is expressly held in *Forbes v. Delashmutt, et al.*, 68 Iowa, 164. See, also, to the same effect

4. SAME: parties.

*Danner v. Hotz,* 74 Iowa, 390.    Doubtless no relief can be had in favor of the corporation itself until service had upon the corporation, under the rules announced in the cases cited in Cook on Stocks and Stockholders (3d Ed.), section 738.    But this is not true as to all the relief asked, nor may the questions be raised by demurrer to the petition.

V.    The pendency of the proceedings in the state of Colorado can not be pleaded in bar, or in abatement of this action for the reason: (1) It is alleged that these entire proceedings were and are part of the scheme to defraud and are covinous and wrongful in character.    (2) As a general rule, an action pending in the courts of another jurisdiction can not be pleaded in bar or in abatement of our action in this state.    See, in support of these propositions:  *Sigwald v. Bank, supra; State Bank v. McElroy, supra; Weigen v. Ins. Co., supra; Allen v. R. R. Co.,* 42 Iowa, 687; *MacGregor v. MacGregor,* 9 Iowa, 78; *Merritt v. Barge Co.,* 79 Fed. 228 (24 C. C. A. 530); *Schmidt v. Posner,* 130 Iowa, 347 (106 N. W. 760); *Conrad v. Buck,* 21 W. Va. 396; *Davis v. Morris' Ex'rs,* 76 Va. 21.

5. SAME: abatement of actions: another action pending.

VI.    It is the rule of this jurisdiction that an injunction will lie to restrain residents of this state from prosecuting fraudulent, collusive, or unlawful proceedings in the courts of another jurisdiction. *Ayres v. Siebel,* 82 Iowa, 347; *Parker v. Lamb,* 99 Iowa, 265; *Teager v. Landsley,* 69 Iowa, 725; *Hager v. Adams,* 70 Iowa, 746.    See, also, the following cases from other jurisdictions: *Brown v. Silver Mining Co.* (C. C.) 55 Fed. 7; *Dunbar v. Am. Telephone,* 224 Ill. 9 (79 N. E. 429, 115 Am. St. Rep. 132, 8 Ann. Cas. 57); *Bigelow v. Calumet Co.* (C. C.) 155 Fed. 879; High on Injunctions (4th Ed.) section 1227.

6. INJUNCTION: restraining action in another state.

·VII. The action is ,not *in rem,* but *in personam,* and the mere fact that some of the property incidentally involved is real property, situated in another jurisdiction,

7. SAME: juris-
diction.
does not deprive our local courts of jurisdiction over persons here resident, who are charged with a violation of some duty of trust. *Hinkley v. Sac Oil Co.,* 132 Iowa, 396; *Brown v. Silver Mining Co., supra;* and the *Teager and Hager* cases, heretofore cited.

VIII. Lastly, it is contended that it does not appear that the Main Gulch Company is solvent, or that plaintiffs have an interest in the matter because of no showing

8. PLEADINGS:
demurrer.
that anything would remain to them after the corporation had paid its debts; that plaintiffs do not offer to do equity in the premises; that a new board of directors has been elected for the Main Gulch Company since the commencement of the action, or perhaps before; and that it does not appear that they have not ratified the alleged illegal acts. None of these propositions have merit. They either appear from the allegations of the petition, or are defensive matters not necessary to be negatived in the petition. No question as to misjoinder of causes of action or of parties is made, and, if there be any cause of action stated in the pleadings against any of the defendants, the demurrer should have been overruled.

The petition does state at least one cause of action against all the defendants, and doubtless more than one, and we are constrained to hold that the demurrer to the petition should not have been sustained, and that under the allegations of the petition the motion to dissolve the temporary writ of injunction should have been overruled.

It follows that the orders and judgments must be, and they are—*Reversed.*