James B. BERGER et al., Appellants,

v.

GENERAL UNITED GROUP, INC., et al., Appellees.

No. 60567.

Supreme Court of Iowa.

June 28, 1978.

Rehearing Denied Sept. 14, 1978.

David C. Bayne, Iowa City, William R. Stengel, Jr., of Coyle & Gilman, Rock Island, Ill., and Bennett Cullison, Jr., of Cullison & Cullison, Harlan, for appellants.

C. Carleton Frederici and Patricia A. Shoff, of Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, and J. Asa Rountree and Mary Jo White, of Debevoise, Plimpton, Lyons & Gates, New York City, for appellees.

Considered by MOORE, C. J., and MASON,* RAWLINGS, UHLENHOPP and REYNOLDSON, JJ.

REYNOLDSON, Justice.

Plaintiffs in this derivative action were stockholders in General United Group, Incorporated (GUG), an Iowa insurance holding company. They alleged defendant Wheelabrator-Frye, Inc. secured control of GUG by purchasing the stock of defendants, GUG president Chapman and chairman Schroeder, for $1.3 million over its fair market value, which constituted a commercial bribe. The twice-substituted petition ultimately alleged GUG was merged in 1973 into defendant All American Delaware Corporation, a Delaware corporation, and the latter corporation in turn merged into defendant All American Life and Casualty Company, conceded by the parties to be an Illinois corporation. Numerous other individual defendants were alleged to have constituted the GUG board of directors (old board) just before the transaction complained of was launched; other named defendants were alleged to have been directors thereafter (new board).

* Serving after June 14, 1978, by special assignment.

The petition asserted that in July, 1967, Wheelabrator agreed to sell to GUG its subsidiary, United Security Life Company, in return for 10,623,150 shares of a new class of GUG stock. Wheelabrator thus acquired approximately 80% of all GUG voting shares. As an integral part of this transaction, conditional upon Wheelabrator gaining 80% voting control in GUG, defendants Schroeder and Chapman received a "stock option": a right to sell their stock for $10 per share although its market value was only $3.25 per share, the price differential being approximately $1,315,000. Wheelabrator then installed its own board of directors of GUG. In February, 1972, defendants Schroeder and Chapman exercised their "stock option" and were paid approximately $1,948,640.

Plaintiffs further alleged the "premium bribe," the issuance of the stock, and the "sale of the offices of the board of directors" were effected by "the intentional, malicious and conscious acts of all of the defendants to deprive GUG of a corporate asset." This, plaintiffs alleged, was in violation of § 741.1, The Code, 1975:

> "It shall be unlawful for * * * any * * * officer * * * of a private corporation * * * acting in behalf of a principal in any business transaction, to receive, for his own use, directly or indirectly, any gift, commission, discount, bonus, or gratuity connected with, relating to, or growing out of such business transaction * * *."

Division I prayed for $1,315,000 actual and $2,000,000 punitive damages. Division II alleged a breach of fiduciary duty and was grounded on a constructive trust theory. It prayed for restitution and damages in the same amounts. Division III sounded in tort and prayed for $1,000,000 actual damages and $2,000,000 punitive damages.

Each division contained the allegation:

> "Plaintiffs have not made a demand on the directors of GUG that the company bring this suit against the other twenty-one substantive defendants because such a demand would be futile because the directors would never authorize suit against themselves."

Wheelabrator filed a motion to dismiss. As amended, it asserted plaintiffs' petition should be dismissed for failure to comply with rule 44, Rules of Civil Procedure, which required plaintiffs to make demand on GUG to bring the action, and because under § 496A.74(2)(c) and applicable Delaware law the cause of action passed to the Delaware corporation and could not be asserted by stockholders of the corporation extinguished by merger.

Trial court sustained the motion to dismiss on both grounds and plaintiffs appeal. We affirm.

I. *Motion to dismiss and scope of review.*

The manner this controversy was litigated below and presented here presents a perplexing threshold question.

Trial court had before it a motion to dismiss. See R.C.P. 104(b). (" * * * (b) Failure to state a claim on which any relief can be granted, may be raised by motion to dismiss such claim, filed before answer.") In this jurisdiction certain rules relating to such motions are well established:

> "Overruling or sustaining a motion to dismiss does not depend upon trial court's discretion. It must rest on legal grounds and is subject to review by this court. (citation)
>
> "A motion to dismiss is a waiver of any ambiguity or uncertainty in the pleadings. (citation) Such a motion grounded on failure to state a cause of action is sustainable only when it appears to a certainty the pleader has failed to state a claim upon which any relief may be granted under any state of facts which could be proved in support of the claim asserted. In making this determination the pleading should be construed in the light most favorable to the pleader with doubts resolved in his favor and the challenged allegations accepted as true. (citations)"

—*Weber v. Madison*, 251 N.W.2d 523, 525 (Iowa 1977)

See *Iowa Truck Center, Inc. v. Davis*, 204 N.W.2d 630, 631 (Iowa 1973).

■ Our review of a ruling on a motion to dismiss is limited. We cannot sustain such motion on grounds not asserted in trial court. *Symmonds v. Chicago, M., St. P. & P. R. Co.*, 242 N.W.2d 262, 264 (Iowa 1976); *Rick v. Boegel*, 205 N.W.2d 713, 716 (Iowa 1973), and citations. However, if any ground asserted in the motion is good, a ruling sustaining the motion will be affirmed even though the ground trial court relied on to make its ruling was not good. *Rick v. Boegel*, supra.

■ Like the old demurrer, a motion to dismiss admits the well-pleaded facts in the pleading assailed for the purpose of testing their legal sufficiency. The motion may not sustain itself by its own allegations of fact not appearing in the challenged pleading. *State ex rel. Krupke v. Witkowski*, 256 N.W.2d 216, 218 (Iowa 1977); *Harrison v. Allied Mutual Casualty Company*, 253 Iowa 728, 730–731, 113 N.W.2d 701, 702 (1962). We have said such averments are no proper part of the motion and must be ignored. *Id.; Herbst v. Treinen*, 249 Iowa 695, 699, 88 N.W.2d 820, 823 (1958); see *Rick v. Boegel*, supra, 205 N.W.2d at 715. The motion to dismiss can neither rely on facts not alleged in the petition (except those of which judicial notice may be taken) nor be aided by an evidentiary hearing. *Riediger v. Marrland Development Corp.*, 253 N.W.2d 915, 916 (Iowa 1977); *Ke-Wash Company v. Stauffer Chemical Company*, 177 N.W.2d 5, 9 (Iowa 1970); see *Kester v. Travelers Indemnity Co. of Hartford, Conn.*, 257 Iowa 1146, 1151, 136 N.W.2d 261, 264 (1965).

■ Apparently in this case all parties forgot they were not in federal court. There, matters outside the challenged pleading, submitted upon a motion to dismiss, may be considered when certain safeguards are being followed and the motion is treated as a motion for summary judgment. See rules 12(b) and 56, Federal Rules of Civil Procedure; *Basel v. Knebel*, 179 U.S. App.D.C. 209, 212, 551 F.2d 395, 398 (1977); *Medina v. Rudman*, 545 F.2d 244, 247 (1st Cir. 1976); *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 392–393 (6th Cir. 1975).

Thus, Wheelabrator's amended motion to dismiss alleged a number of factual matters not mentioned in plaintiffs' petition, including the law of Delaware. Attached was Wheelabrator's New York counsel's affidavit submitting further facts for consideration.

■ We have consistently held the law of a sister state, statutory or common, is a question of fact. *In re Drumheller's Estate*, 252 Iowa 1378, 1385, 110 N.W.2d 833, 836 (1961). Foreign law must be pleaded. *Fetters v. Degnan*, 250 N.W.2d 25, 27 (Iowa 1977); *Zeman v. Canton State Bank*, 211 N.W.2d 346, 349 (Iowa 1973). We may judicially note a sister state's statute asserted and plainly designated in a pleading. R.C.P. 94. Other law of a sister state may be proved as provided by statute. See § 622.61, The Code; *Matter of Estate of Allen*, 239 N.W.2d 163, 168–169 (Iowa 1976).

■ But a motion to dismiss is not a pleading. R.C.P. 68 and 109; see *Iowa City v. Muscatine Development Company*, 258 Iowa 1024, 1032, 141 N.W.2d 585, 591 (1966). Therefore, statutory and case law referred to in a motion to dismiss hardly could be considered properly pleaded. As an evidentiary hearing on a motion to dismiss would be improper in this jurisdiction, *Riediger v. Marrland Development Corp.*, supra, 253 N.W.2d at 916, we cannot assume proof of Delaware law was offered below. See *Berghammer v. Smith*, 185 N.W.2d 226, 230–231 (Iowa 1971).

■ Plaintiffs not only failed to raise these issues below, they countered with a brief alleging additional facts not asserted in their petition, and on one facet of their argument rely on Delaware law.

Nor do plaintiffs argue on appeal the alleged Delaware law was not pleaded or proved or properly before trial court. They do not assert we should disregard it.

Some of the events complained of in this petition occurred almost 12 years ago. This action is more than two years old. There is no issue and no controversy concerning the

Delaware law referred to in both briefs. If trial court committed error, the parties gave the court no chance to correct it. In this instance we are inclined to dispose of this appeal on the issues framed and argued by the parties. We shall consider the Delaware statutory and case law referred to in the briefs. This decision should not be accepted as precedent for ignoring our rules of pleading or proof relating to foreign law, or our rules which confine the scope of inquiry on an R.C.P. 104(b) motion to dismiss a petition.

## II. *Demand on the corporation.*

▮ Authority to sue for corporate injuries ordinarily reposes in corporate management. Generally, for a stockholder to show a right to sue on behalf of the corporation, he or she must allege with some particularity remedies within the corporation have been exhausted by making sufficient demand upon the directors or other officers to sue or show sufficient reason for not doing so. *Delaware & H. Co. v. Albany & S. R. Co.*, 213 U.S. 435, 452–453, 29 S.Ct. 540, 545, 53 L.Ed. 862, 869 (1909); *Doctor v. Harrington*, 196 U.S. 579, 588–589, 25 S.Ct. 355, 357–358, 49 L.Ed. 606, 610 (1905); *Hawes v. Oakland*, 104 U.S. 450, 460–461, 26 L.Ed. 827, 832 (1882); 13 Fletcher Cyclopedia Corporations, § 5963, pp. 360–365 (Wolf.Rev. 1970); 19 Am.Jur.2d, Corporations, § 540, pp. 76–77 (1965).

In Iowa this concept presently is incorporated in a rule of civil procedure:

"Rule 44. *Shareholder's actions.*

"Shareholders in an incorporated or unincorporated association, who sue to enforce its rights because of its failure to do so, shall support their petition by affidavit, and allege their efforts to have the directors, trustees or other shareholders bring the action or enforce the right, or a sufficient reason for not making such effort."

An expanded version of the same principle is found in rule 23.1 (formerly 23(b)), F.R. C.P. Relating to this rule the Supreme Court in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 371, 86 S.Ct. 845, 850, 15 L.Ed.2d 807, 812–813 (1966), said:

"Rule 23(b) was not written in order to bar derivative suits. Unquestionably it was originally adopted and has served since in part as a means to discourage 'strike suits' by people who might be interested in getting quick dollars by making charges without regard to their truth so as to coerce corporate managers to settle worthless claims in order to get rid of them. On the other hand, however, derivative suits have played a rather important role in protecting shareholders of corporations from the designing schemes and wiles of insiders who are willing to betray their company's interests in order to enrich themselves."

▮ Behind the demand rule is the rationale courts should not interfere in internal affairs of private corporations until all intracorporate remedies have been exhausted. The demand provides opportunity for directors to occupy their usual status as corporate managers and gives the corporation a chance to take control of litigation to be brought on its own behalf. 3B Moore's Federal Practice § 23.1.19, at 23.1–79—23.-1–99 (2d ed. 1976); 7A Wright and Miller, Federal Practice and Procedure, § 1832, at 383–392 (1972); comment, Stockholder Derivative Actions, 44 U.Chi.L.Rev. 168, 171–172 (1976).

Federal courts divide on the question whether F.R.C.P. 23.1 should be applied rigidly. Several jurisdictions hold rule 23.1 is an exceptional rule of pleading, serving a special purpose, and does not fall within the liberalized "notice" pleading concept. *In re Kauffman Mutual Fund Actions*, 479 F.2d 257, 263 (1st Cir. 1973), cert. den., 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 107 (1973); see *Vernars v. Young*, 539 F.2d 966, 968 (3rd Cir. 1976); *Lucking v. Delano*, 117 F.2d 159, 160 (6th Cir. 1941). Other courts are lenient in excusing demand, and construe liberally the stockholder's pleaded reasons for not making an effort to obtain the action from the directors. *de Haas v. Empire Petroleum Company*, 435 F.2d 1223, 1228 (10th Cir. 1970); *Meltzer v. Atlantic Research Corporation*, 330 F.2d 946, 948 (4th

636

Cir. 1964), cert. den., 379 U.S. 841, 85 S.Ct. 78, 13 L.Ed.2d 47 (1964); *In re Penn Central Securities Litigation*, 367 F.Supp. 1158, 1164 (E.D.Pa. 1973).

Iowa decisions indicate this court has not imposed onerous restraints in derivative actions. See *Holi-Rest, Inc. v. Treloar*, 217 N.W.2d 517, 523 (Iowa 1974) ("[W]e observe no proposition for reversal is asserted based on Mrs. Coll's failure to make demand upon defendant as controlling director of the corporation to assert the corporate right. * * Of course, defendant may have been familiar with our principle of law obviating such requirement where a demand would be a vain and useless thing."); *Des Moines Bank & Trust Co. v. George M. Bechtel & Co.*, 243 Iowa 1007, 1083, 51 N.W.2d 174, 217 (1952) ("But if such demand would be a vain and useless thing no demand is necessary, but the petition should state the reasons."); *First Nat. Bank v. Fireproof S. B. Co.*, 199 Iowa 1285, 1294, 202 N.W. 14, 18 (1925) ("Where, however, the corporation is under the control of the party charged with the wrongful diversion, such a demand, since it would be unavailing, need not be made."); *Reed v. Hollingsworth*, 157 Iowa 94, 106, 135 N.W. 37, 42 (1912) ("But where these officers are themselves guilty of fraud and misfeasance is charged, it is apparent that demand upon them to bring suit against themselves would be a vain and useless thing, and in such cases no demand is necessary."); *Schoening v. Schwenk*, 112 Iowa 733, 736, 84 N.W. 916, 916 (1901) ("It is doubtful, under the authorities, whether any proceeding by way of securing redress inside the corporation is necessary where it is plain that it would be futile.").

These decisions do not assist us, however, in determining what must be contained in a challenged petition to meet the R.C.P. 44 requirement that stockholders must "allege * * * sufficient reason for not making such effort." In *Holi-Rest*, supra, neither demand nor reason for not making it were alleged, but the issue was not raised in trial court or this court. The unusual circumstances there alleged clearly indicated demand would have been an empty formality.

On this issue we are persuaded by those decisions which hold a general allegation of futility of demand is sufficient if other assertions of fact in the petition are detailed enough to demonstrate a demand would have been unavailing. See, e. g., *Liboff v. Wolfson*, 437 F.2d 121, 122 (5th Cir. 1971); *In re Penn Central Securities Litigation*, supra, 367 F.Supp. at 1164; 19 Am.Jur.2d, Corporations, § 542, pp. 78–79. At the same time, we find it difficult to understand, in absence of a race to meet a limitation statute deadline, why so many plaintiffs in derivative actions run risks and the type of challenge disclosed by this controversy when the R.C.P. 44 demand requirement may be satisfied so easily:

"The demand requirement also imposes little hardship on the complaining shareholders. The requirement can be satisfied by simply mailing a copy of the complaint to the board of directors advising them that unless the corporation enforces its rights, the shareholders will institute a derivative action against the alleged wrongdoer. A refusal should ordinarily have to be secured, but a failure by the directors to act within a reasonable time should suffice to satisfy the demand requirement."

(footnotes omitted)

—Comment, Stockholder Derivative Actions, supra, 44 U.Chi.L.Rev. at 172

In the case before us, the demand issue is further complicated. The events plaintiffs complain of are alleged to have occurred in the period July, 1967, to February, 1972. GUG, it is alleged, merged into All American Delaware Corporation in 1973, "at which time defendant All American Delaware Corporation assumed all of the rights and obligations of the defendant General United Group, Incorporated." Plaintiffs further alleged the Delaware corporation in turn merged into All American Life and Casualty Company.

This petition was filed three years later on May 27, 1976. At that point GUG was nonexistent. Yet the petition as twice amended continued to assert demand had not been made on *GUG directors* "because

such a demand would be futile because the directors would never authorize suit against themselves."

Plaintiffs' brief (page 5) capsulates their analysis of this litigation in the following manner:

"In succinct terms: In a derivative action Plaintiff Shidler is suing the true plaintiff, his own company, All American, to recover for All American against Wheelabrator and Schroeder for premium-bribery.

"Henceforward Plaintiff Shidler as a moving force will disappear from this Brief. The discussion will solely concern: All American versus Wheelabrator and Schroeder, in the matter of premium-bribery in the sale of control of GUG."

▇▇ This petition does not allege any demand was made on the directors of either subsequent "All American" corporation. It does not allege a demand would be futile, nor does it allege *any* reason, let alone a sufficient reason, for not making demand. See R.C.P. 44. Unlike the situation in *Holi-Rest*, defendant in this action raised this issue in trial court and pursues it here.

▇▇ Plaintiffs' brief refers to Moody's reports, and makes other factual assertions not contained in their petition, to show a minority of directors of the All American corporations were former GUG directors. We cannot take judicial notice of such matters. The petition does not allege the former GUG directors were on the All American board or controlled the All American corporations. Nor were All American directors made defendants.

If, as the decisions indicate, a demand on a preceding board of the same corporation would not meet requirements of the rule, it seems obvious a pleading which does not allege any demand on the board of a successor corporation, nor any excuse for such failure, would be fatally defective. See *Corey v. Independent Ice Co.*, 207 F. 459, 464–465 (D.Mass. 1913); 3B Moore's Federal Practice, supra, § 23.1.19, at 23.1–81—23.1–82.

We hold trial court properly sustained the motion to dismiss on the ground plaintiffs' petition did not comply with R.C.P. 44.

III. *Plaintiffs' standing to sue derivatively.*

District court found plaintiffs lacked standing to sue derivatively on GUG's behalf. It reasoned Delaware law controlled the issue because GUG had been merged into a Delaware corporation.

Plaintiffs assert their claim survived the merger. They rely on the following portions of § 496A.73, The Code, ("Effect of merger or consolidation"):

"* * *

"When such merger * * * has been effected:

"* * *

"5. Such surviving * * * corporation shall thenceforth be responsible and liable for all the liabilities and obligations of each of the corporations so merged * * *; and *any claim existing* or action or proceeding pending by or against any of such corporations *may be prosecuted as if such merger * * * had not taken place*, or such surviving * * * corporation may be substituted in its place. Neither the rights of creditors nor any liens upon the property of any such corporation shall be impaired by such merger * * *." (emphasis supplied)

An examination of Chapter 496A, The Code, indicates the statutory provision above quoted is part of a sequence of statutes relating to merger of *domestic* corporations. These statutes commence with *§ 496A.68 "Procedure for merger.* Any two or more domestic corporations may merge * * *." They terminate with § 496A.73, describing the effect of such merger.

However, § 496A.74, The Code, addresses merger between domestic and foreign corporations:

"One or more foreign corporations and one or more domestic corporations may be merged * * * in the following manner, if such merger * * * is permitted by the laws of the state under which each such foreign corporation is organized: * * *

"2. * * *

"c. * * *

"The effect of such merger * * * shall be the same as in the case of the merger * * * of domestic corporations, if the surviving * *. * corporation is to be governed by the laws of this state. If the surviving * * * corporation is to be governed by the laws of any state other than this state, the effect of such merger * * * shall be the same as in the case of the merger * * * of domestic corporations *except insofar as the laws of such other state provide otherwise.*" (emphasis supplied)

Trial court found the last quoted statutory provision to require application of Delaware law, specifically, Del.Code Ann. tit. 8, § 259(a):

"When any merger * * * shall have become effective under this chapter, for all purposes of the laws of this State the separate existence of all the constituent corporations, or of all such constituent corporations except the one into which the other or others of such constituent corporations have been merged, as the case may be, shall cease and the constituent corporations shall become a new corporation, or be merged into 1 of such corporations, as the case may be, possessing all the rights, privileges, powers and franchises as well of a public as of a private nature, and being subject to all the restrictions, disabilities and duties of each of such corporations so merged * * *."

 This Delaware statute has been interpreted consistently to deny a corporation that disappears in merger and its former shareholders standing to maintain a claim. See *Smallwood v. Pearl Brewing Company*, 489 F.2d 579, 592 (5th Cir. 1974), cert. den., 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974); *Vine v. Beneficial Finance Co.*, 374 F.2d 627, 635 (2d Cir. 1967), cert. den., 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967); *Voege v. Ackerman*, 364 F.Supp. 72, 74 (S.D.N.Y. 1973); *Basch v. Tally Industries, Inc.*, 53 F.R.D. 9, 11–12 (S.D.N.Y. 1971); *Bokat v. Getty Oil Co.*, 262 A.2d 246, 249 (Del.Supr. 1970); *Braasch v. Goldschmidt*, 41 Del.Ch. 519, 530, 199 A.2d 760, 767 (1964). By virtue of merger derivative rights pass to the surviving corporation. *Heit v. Tenneco, Inc.*, 319 F.Supp. 884, 887 (D.Del. 1970).

 We think trial court properly ruled the governing Iowa statute is § 496A.74(2)(c), not § 496A.73(5). Other Iowa code provisions also distinguish between mergers of domestic corporations and mergers of domestic and foreign corporations. See, e. g., §§ 491.110 and 491.111, The Code. When interpreting such statutory schemes, we seek to give effect to all provisions of the Act, and do not presume statutes are repetitious or superfluous. *State v. Jennie Coulter Day Nursery*, 218 N.W.2d 579, 582 (Iowa 1974). Related statutes are read in *pari materia* and terms of a specific statute control over those of a general statute. *Doe v. Ray*, 251 N.W.2d 496, 501 (Iowa 1977). It follows that § 496A.74 should control this instance of merger between domestic and foreign corporations, as the surviving corporation is not incorporated in Iowa.

 Plaintiffs allege they are stockholders of GUG. They do not allege they are stockholders of either All American corporation, nor do they plead the merger gave them the right to exchange GUG stock for All American stock.

They first assert standing to maintain this action for GUG relying on § 496A.73(5) ("[A]ny claim existing * * * may be prosecuted as if such merger * * * had not taken place * * *."). We have explored that theory and rejected it, above, on the ground § 496A.73 relates only to merger of domestic corporations.

Plaintiffs next rely on three federal decisions, all presenting situations distinguishable from the one pled in this action. While *Jones v. Missouri-Edison Electric Co.*, 144 F. 765, 777 (8th Cir. 1906), contains language the consolidated corporation "was not so irrevocably dissolved that its rehabilitation is beyond the power of a court of chan-

cery," the court pointed out the consolidation was voidable at the suit of the minority stockholders. That was, in fact, the prayer of the equity petition in that litigation. *Id.,* 144 F. at 770. That question is not involved under the petition before us.

*Smallwood v. Pearl Brewing Company,* supra, 489 F.2d 579, involved an action under rule 10b–5 of the Securities Exchange Act of 1934. Among other things, plaintiff Smallwood directly attacked a corporate merger. The circuit court held he had standing, based on his right under the merger to exchange his stock certificates for certificates in the surviving corporation. *Id.,* 489 F.2d at 589–594. There is nothing in the petition before us to indicate these plaintiffs had any stock exchange rights under the mergers alleged.

*Miller v. Steinbach,* 268 F.Supp. 255 (S.D. N.Y. 1967), was another action alleging fraud in a corporate merger, claiming violations of federal securities law. The federal court rejected defendants' argument that Pennsylvania law should apply to bar suit by the merged corporation, on two grounds. The first was because "the very merger itself took place because of the allegedly wrongful activities of the directors of the old corporation and the management of the surviving corporation among others." *Id.,* 268 F.Supp. at 267. There is no such allegation, or any allegation asserting fraud in the mergers, in the petition before us. The second ground was based on application of the rule that "where an action is based on the federal securities laws, state substantive or procedural laws may not impede the application of the federal statute." *Id.,* at 268. Again, that rule has no application in this case.

Contending they have standing to sue, plaintiffs argue in the alternative "All American" (referring to both successor corporations) should be the derivative plaintiff to assert the cause of action formerly held by GUG. This theory is unsupported by any allegations in the petition. Nowhere is it asserted plaintiffs are stockholders of "All American," or that the merger effected after the events complained of contemplated a stock-for-stock exchange. We already have noted that under the Delaware law made applicable by the Iowa code, derivative rights pass to the surviving corporation. Limited as we are by the confines of the petition under attack, we are not convinced, as are plaintiffs (without citation of authorities) that, "[w]ere there perchance an Iowa Code to the contrary again no matter, because Equity would nonetheless hold contra the Code, so patent are the equities of the matter." We are not convinced a statutory mandate to apply the law of a sister state may be ignored so readily.

The § 496A.74(2)(c) requirement we apply Delaware law, coupled with plaintiffs' failure to attack the merger, may in this instance have relegated plaintiffs to their payoff rights as dissenting shareholders, see § 496A.74(2)(c), or their rights under litigation presently in federal court, referred to in the briefs. These matters are not before us on this appeal and we take no notice of them.

In view of the allegations of this petition, we hold trial court was right in ruling plaintiffs had no standing to sue.

AFFIRMED.