# IN THE COURT OF APPEALS OF IOWA

No. 18-0927
Filed May 15, 2019

**MAXWELL R. ALBERHASKY,**
     Plaintiff-Appellant,

**vs.**

**GEORGE RODNEY ALBERHASKY,**
     Defendant-Appellee,

**and**

**GRAYSON H. ALBERHASKY,**
     Intervenor-Appellee.
_____

     Appeal from the Iowa District Court for Johnson County, Mary E. Howes,

Judge.


     A son appeals the dismissal of the lawsuit against his father alleging breach

of fiduciary duties.  **REVERSED AND REMANDED.**


     Stephen C. Gerard II and Angela Boeke, Breckenridge, Colorado, for

appellant.

     Kerry A. Finley and Stephen B. Jackson Sr. of Shuttleworth & Ingersoll,

PLC, Cedar Rapids, for appellee George Rodney Alberhasky.

     Justin A. Teitle of Teitle Law Offices, P.C., Bettendorf, for appellee Grayson

H. Alberhasky.

     Heard by Vogel, C.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

Maxwell Alberhasky sued his father, George Rodney Alberhasky, alleging Rod breached his fiduciary duties as a trustee of assets transferred to Max by Rod's mother, Alois Alberhasky.[1]  The district court dismissed Max's petition on Rod's motion.  Because we must assume the petition's well-pled facts to be true, and because those facts reveal a conceivable route for Max to prove a right of recovery, we find dismissal was premature.  We reverse and remand for further proceedings.

I.      **Facts and Prior Proceedings**

This father-son dispute inhabits the intersection of a grandmother's generosity and an acrimonious divorce.  The divorce litigation dates back to 1999, when Rod petitioned to end his marriage to Angela Boeke.  Together, Rod and Angela had two sons—Max and Grayson.[2]  In 2000, the boys' paternal grandmother, Allie, established a revocable trust (Allie's Trust) as part of her estate planning. Allie named herself trustee and designated her son, Rod, and her daughter, JoEllen, as successor trustees upon her incapacitation.  Rod and JoEllen assumed their roles as co-trustees of Allie's Trust in 2009.

In 2010, Allie's Trust enrolled in an Iowa Advisor 529 Plan[3] with Max as the named beneficiary, depositing $65,000 in trust assets into the account.  The check

---

[1] Because several individuals involved in this appeal share a surname, we refer to them by first name for clarity's sake.  The petitioner is known as Max, his father is known as Rod, and the grandmother is called Allie.  Max's brother, Grayson, is an intervenor.

[2] According to Max's brief: "Following the dissolution of marriage, Max chose to live primarily with his mother while Grayson chose to live with his father."

[3] Iowa Code chapter 12D authorizes the establishment of so-called "529 plans," named after section 529 of the Internal Revenue Code.  *See* 26 U.S.C. § 529 (2018).  Individuals and entities can establish 529 plans to fund a beneficiary's college education while benefitting from tax breaks on cash placed in the account.  *See* Iowa Code §§ 12D.1, .9.

drawn from Allie's Trust and deposited into the 529 plan was annotated: "FBO Max Alberhasky." Allie's Trust likewise set up 529 plans with identical deposits for the benefit of her other three grandchildren. Also as part of her estate planning, Allie transferred her interest in a North Liberty farm to the Alberhasky Family LLC and distributed shares to Rod, JoEllen, Max, Grayson, and JoEllen's two children. Allie gave these shares to her grandchildren through the Uniform Transfers to Minors Act (UTMA).[4]

Allie died in 2011. In 2012, Rod modified the 529 plan initially naming Max as the beneficiary to instead name Max's younger brother Grayson as beneficiary.

In December 2013, Max sued Rod.[5] The petition alleged these facts:

- Allie "made regular annual monetary gifts to each of her grandchildren."
- Allie "also funded 529 College Savings Plans for each of her grandchildren in equal amounts specifically to provide for her grandchildren's future education."
- Rod "has acted as a trustee of various assets and funds" belonging to Max, held under the UTMA.[6]
- Rod "also acted as co-trustee of the 529 College Savings Plan" established for Max's benefit by Allie's Trust.
- The district court presiding over the divorce proceedings removed Rod as trustee of Max's UTMA assets and 529 plan.
- The court subsequently appointed USBank as successor trustee of Max's UTMA funds.
- Max received the UTMA assets held by the USBank trust department in November 2013.

Based on these facts, the petition contended Rod owed Max fiduciary duties in handling both the 529 plan and UTMA funds, and Rod breached those fiduciary

---

[4] In their pleadings and briefs, the parties refer interchangeably to assets under the UTMA and UGMA (Uniform Gifts to Minors Act, the former title of the uniform act). Because chapter 565B is called "the Iowa Uniform Transfers to Minors Act" (Iowa Code § 565B.25 (2013)) and for the sake of consistency, we use the acronym UTMA in this opinion.

[5] Max's petition originally included claims against his aunt, JoEllen. Before the hearing on the motion to dismiss, Max dismissed his allegations against JoEllen.

[6] While Max's petition uses the term "trustee," the UTMA refers to the individual controlling the UTMA property as a "custodian." *See* Iowa Code §§ 565B.1(7), .12(1)–(5).

duties.[7] The petition sought three remedies: (1) an accounting of the UTMA assets held for Max, (2) a voiding of the transaction transferring the beneficiary designation of the 529 account from Max to Grayson, and (3) damages stemming from Rod's alleged breach of fiduciary duties.

In February 2014, Rod moved to dismiss Max's suit for failure to state a claim upon which relief can be granted. Rod argued the 529 plan was not subject to the Iowa Trust Code (Iowa Code chapter 633A) and Max lacked standing to challenge any change in beneficiary designation of the 529 plan because plan owners are authorized to change beneficiaries as they see fit. *See* Iowa Code § 12D.3(3)(a)–(b). Rod further asserted the UTMA assets were not governed by the trust code, but he agreed to provide an accounting of the UTMA funds.

Grayson moved to intervene, alleging he had "a direct financial interest in the outcome of these proceedings." The court granted Grayson's motion.[8]

---

[7] The petition set out these allegations focused on the breach of fiduciary duties:

> 1. [Max] believes [Rod] has breached his fiduciary duties as trustee of Maxwell's UTMA funds and assets as required by Iowa Code Section 633A.4202(1).
> 2. Specifically, but not limited to, [Max] believes that [Rod] has liquidated [Max]'s interest in an entity known as Alberhasky Family LLC for less than the true value of his interest.
> 3. Further, [Max] believes that [Rod] has caused him to incur Federal Income Tax liability as a result of the liquidation of his interest in Alberhasky Family LLC which was paid by [Rod] from [Max]'s other U[T]MA funds to [Max]'s detriment.
> 4. [Rod] breached his fiduciary responsibility to [Max] by transferring the 529 College Savings Plan funds held for the benefit of [Max] to [Max]'s brother Grayson.
> 5. Further acts of breach of fiduciary duty may be disclosed by the accounting sought herein.
> 6. [Rod] acted with bad faith and malice toward [Max] in his fiduciary acts.
> 7. [Rod] should be required to restore the 529 College Savings Plan and trust corpus diminished by his conduct from his own assets.

[8] For brevity's sake, we will refer to Rod's arguments when discussing the positions taken by both Rod and Grayson in this litigation.

The district court held a hearing on Rod's motion to dismiss. Rod offered the testimony of two experts on 529 plans—financial advisor Robert Milbrath and attorney Robert N. Downer. Rod additionally submitted a number of exhibits relating to Allie's Trust and the 529 accounts.[9]

Following the hearing, the district court granted the motion to dismiss. On the UTMA assets, the court concluded: "[T]he Iowa Trust Code does not apply to the UTMA account and the UTMA account was closed with funds distributed to the petitioner in 2012." In dismissing Max's claim relating to the 529 plan, the court found Max had "no standing" to challenge how the account was controlled by the owner. The court also found no authority to support the proposition that a 529 account is subject to the trust code.

Max appeals, arguing the district court erred in holding an evidentiary hearing on the motion to dismiss and misapplied legal standards in dismissing his claims. Because Max's petition satisfies Iowa's liberal notice-pleading standards, we reverse the district court's grant of Rod's motion to dismiss for failure to state a claim upon which relief can be granted.

## II.    Scope and Standard of Review

We review the grant of a motion to dismiss for correction of errors at law. *Turner v. Iowa State Bank & Tr. Co.*, 743 N.W.2d 1, 2–3 (Iowa 2007). Dismissal is appropriate if the petitioner "fails to state a claim upon which any relief may be

_____

[9] Max's attorney reacted to the offer of evidence as follows:
> This hearing is a Motion to Dismiss. . . . It's not an evidentiary hearing. It's a legal issue to submit to the court based upon the pleading itself. So while, I guess, I don't want to object to the exhibits because I think sooner or later it's going to be good to have all of these things, I don't think exhibits can be used to support a motion to dismiss.

granted." *Id.* at 2 (citing Iowa R. Civ. P. 1.421(1)(f)). A motion to dismiss tests "the legal sufficiency of the petition." *Id.* at 3 (citing *Berger v. Gen. United Grp., Inc.*, 268 N.W.2d 630, 634 (Iowa 1978)). We view the petition in the light most favorable to Max, resolving any doubts in his favor. *See Rees v. City of Shenandoah*, 682 N.W.2d 77, 79 (Iowa 2004).

III.     Analysis

A. **Did the district court treat Rod's motion as a request for summary judgment?**

Rod argues the evidence considered and standard employed by the district court are of no consequence, because "[w]hen a district court considers additional matters outside the pleadings, the reviewing court may treat a motion to dismiss as a motion for summary judgment." Rod's argument overstates when a court may consider substance over form and treat a motion that, in name, seeks dismissal on the pleadings, but in content, reveals a motion for summary judgment. *See In re Marriage of Glade*, 501 N.W.2d 563, 565 (Iowa Ct. App. 1993).

The district court's decision to allow expert testimony on the underlying legal issues did not transform Rod's motion to dismiss into a motion for summary judgment.[10] Rod's motion, supporting briefs, and the hearing explored this question: did Max's petition state a cognizable claim for recovery under the trust code?[11] The parties did not debate the existence of a genuine dispute of material fact. *See Mormann v. Iowa Workforce Dev.*, 913 N.W.2d 554, 566 (Iowa 2018)

---

[10] Because our holding rests on the district court's misapplication of the law in granting Rod's motion to dismiss, we need not decide the propriety of hearing expert testimony before deciding whether to dismiss based on the petition's failure to state a claim upon which any relief may be granted or whether Max preserved error on his objection to that procedure.

[11] On appeal Rod does not assert the absence of a genuine issue of material fact.

(discussing difference between motion on pleadings and standards for summary judgment). We conclude it would be inappropriate to treat the court's dismissal on the pleadings as a grant of summary judgment in Rod's favor. *See id.*

Because we cannot interpret the litigation in the district court as summary-judgment proceedings by another name, we turn to Max's petition.

### B. Does Max's petition state claims upon which relief can be granted?

Max argues the district court wrongly dismissed his petition. He contends the petition was not required to identify a specific legal theory but could go forward if its factual allegations gave Rod "fair notice" of the events giving rise to the claim. Case law supports his contention a motion to dismiss should only be granted if the petition on its face shows no right of recovery under any set of facts. *Belk v. State*, 905 N.W.2d 185, 188 (Iowa 2017). Under notice pleading, almost every case survives a motion to dismiss. *Rees*, 682 N.W.2d at 79.

Iowa's notice-pleading rules encourage courts to determine controversies on their merits. Iowa R. Civ. P. 1.402(1). A pleading meets the notice requirement if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment for the type of relief sought." Iowa R. Civ. P. 1.403(1). With these principles in mind, we turn to the particulars of Max's petition.

*1. Max's claim concerning the 529 plan.* The petition alerted Rod to Max's factual assertions that Allie funded college savings plans for each of her grandchildren in equal amounts and Rod acted as a trustee of the 529 plan established for Max's benefit by Allie's Trust. The complaint alleged Rod breached

his fiduciary duty to Max by transferring to Grayson the funds in Max's 529 plan, which were deposited by Allie's Trust.

In his motion to dismiss, Rod argued the 529 plan was not subject to Iowa Code chapter 633A, and the owner of such an account could change the beneficiaries, so no relief could be granted on this claim. The district court accepted that argument, reasoning Iowa Code chapter 633A was inapplicable because chapter 12D governed 529 plans.[12]

To bolster the district court's conclusion, Rod quotes secondary sources explaining the lack of fiduciary duties connected with ownership of 529 plans. For example:

> [T]he account owner of a section 529 savings account has no fiduciary duties to the beneficiary of the account. Thus the account owner could change the beneficiary or withdraw the funds himself or herself and the beneficiary would have no grounds for complaint, even if the account owner's actions clearly violated the donor's intent.

Susan T. Bart, *The Best of Both Worlds: Using a Trust to Make Your 529 Savings Accounts Rock*, 34 ACTEC J. 106, 106 (2008).

But Rod overlooks passages in those same articles discussing the effects of enveloping a 529 plan within a trust. Such as:

> A trust-owned 529 account may be the only mechanism to ensure that the donor's wishes are carried out. If a trust is the account owner, the trustee is bound by the terms of the trust and has a fiduciary duty to the trust beneficiaries.

---

[12] Iowa Code section 12D.3 provides, in pertinent part:
  a. A beneficiary under a participation agreement may be changed as permitted under rules adopted by the treasurer of state upon written request of the participant as long as the substitute beneficiary is eligible for participation.
  b. Participation agreements may otherwise be freely amended throughout their terms in order to enable participants to increase or decrease the level of participation, change the designation of beneficiaries, and carry out similar matters as authorized by rule.

. . . .

When the primary objective is to fund a section 529 savings account, placing a trust wrapper around the section 529 savings account can restrain within fiduciary confines some of the tremendous flexibility permitted under Code section 529.

*Id.* at 107.[13]

The district court did not consider the possibility that an investment could be both governed by chapter 12D and subject to the trust code. As a result, the district court's legal analysis stopped short of examining Iowa Code section 633A.4202, which describes the fiduciary duties of trustees:

(1) A trustee shall administer the trust solely in the interest of the beneficiaries, and shall act with due regard to their respective interests.

(2) Any transaction involving the trust which is affected by a material conflict between the trustee's fiduciary and personal interests is voidable by a beneficiary affected by the transaction unless one of the following applies:

a. The transaction was expressly authorized by the terms of the trust.

b. The beneficiary consented to or affirmed the transaction or released the trustee from liability as provided in section 633A.4506.

c. The transaction is approved by the court after notice to interested persons.

(3) A transaction affected by a material conflict between personal and fiduciary interests includes any sale, encumbrance, or other transaction involving the trust property entered into by the trustee, the spouse, descendant, agent, or attorney of a trustee, or

---

[13] Estate-planning expert Bart has written extensively about the opportunity for trusts to invest assets in 529 accounts, explaining:

The trustee would open the [529 plan] with cash already in the trust, with the trust as the account owner and the trust beneficiary as the [529 plan] beneficiary. The trustee could direct a qualified distribution to the beneficiary, change the beneficiary (presumably under the trust terms only to another beneficiary of the trust), or direct a nonqualified distribution back to the trust.

Susan T. Bart, *Planning for College Using Section 529 Savings Accounts*, 16 Prac. Tax Law. 37, 45 (2002). In her scholarship, Bart makes clear the trustee, as the account owner, would have the power to change the beneficiary of a section 529 account only *subject to the terms of the trust. See, e.g.*, Susan T. Bart, *No Taxpayer Left Behind: Tax-Wise Techniques for Funding Education, in* 1 *Planning Techniques for Large Estates* 173, 250 (ALI-ABA Course of Study, Apr. 23–27, 2012), Westlaw ST041 ALI-CLE 173.

corporation or other enterprise in which the trustee has a substantial beneficial interest.

Max's petition alleges Allie deposited funds into a 529 plan for Max's benefit with the intent to create a trust to fund his college education. The definitions in section 633A.1102 do not expressly exclude such an investment from the trust code. Any kind of property may be transferred and conveyed by the owner to a trustee to be held by the trustee for the use or benefit of others. *See Haulman v. Haulman*, 145 N.W. 930, 933 (Iowa 1914); *see also* Iowa Code § 633A.1104 (explaining common law of trusts may supplement the trust code). Nor does chapter 12D place all 529 plans outside the reach of the trust code. *Cf.* Iowa Code § 565B.24 ("Chapter 633 and all other laws of this state to the extent contrary to this chapter do not apply to the custodial property of a minor held by the custodian under this chapter."). While section 12D.3 enables an individual account owner to change the beneficiary designation, such freedom does not automatically supplant fiduciary duties imposed on a trustee in managing a trust-owned 529 plan.

After reviewing the substantive law on trusts and 529 plans, we find Max's petition was legally sufficient to survive a motion to dismiss. The applicability of chapter 633A depends upon whether Allie created a trust for Max by investing in the 529 plan as Max alleged in his petition. Whether Allie created a trust for Max's benefit and under what terms are questions of fact. *See Butler v. Butler*, 114 N.W.2d 595, 612 (Iowa 1962) ("Whether a trust has been perfectly created is largely a question of fact in each case, and the court in determining the fact will give efficacy to the situation and relation of the parties, the nature and situation of the [property], and the purpose and objects which the settlor had in view." (quoting

1 *Perry on Trusts and Trustees* 124 (7th ed. 1929))). Assuming—as we must— the truth of Max's factual allegations, the funds in the 529 plan were held in trust for Max. And if Rod, acting as trustee, depleted those funds out of animus toward Max, that action could constitute a breach of fiduciary duty under section 633A.4202, entitling Max to relief. The district court should not have dismissed Max's claims for breach of fiduciary duty relating to the 529 plan. *See* Iowa R. Civ. P. 1.403(1).[14]

2. *Max's claim concerning the UTMA assets.* The district court found "no law" to support Max's claim the trust code applied to the UTMA account established by Allie and managed by Rod. The court decided Rod's "obligations for the UTMA account were limited to those obligations set forth in Iowa Code chapter 565B. Those include to invest under the prudent person standard and keep the UTMA asset separate and distinct from his personal assets and keep records." In dismissing this claim, the court noted Max had offered "no allegations or proof" Rod "behaved to the contrary." [15]

---

[14] To the extent Rod argues Max lacked standing to challenge the change of beneficiary designation, our conclusion 529 plans are not excluded from application of the trust code is dispositive. Taking the petition's allegations as true, Max, as beneficiary, has standing to challenge Rod's management of the plan. *See* Iowa Code § 633A.1102(2) ("Beneficiary . . . includes a person who has any present or future interest in the trust, vested or contingent, and also includes the owner of an interest by assignment or other transfer."); § 633A.6202(1) ("[A] trustee or beneficiary of a trust may petition the court concerning the internal affairs of the trust or to determine the existence of the trust."); *see also In re Kenneth L. Grandquist Revocable Tr.*, No. 03-1688, 2005 WL 1962554, at *2 (Iowa Ct. App. Aug. 17, 2005). Additionally, we note a logical inconsistency between the court's conclusion Grayson had standing to intervene and Rod's argument Max lacked standing to challenge the transfer.

[15] Contrary to the district court's language, Max was not required to prove his allegations at this stage of the proceedings. *See Turner*, 743 N.W.2d at 4 ("In a motion to dismiss based on the plaintiff's failure to state a claim upon which any relief may be granted, the court can only consider the well-pled facts, not the factual allegations contained in the motion or the documents attached to the motion." (citing *Berger*, 268 N.W.2d at 634)).

It is true the trust code excludes "custodial arrangement(s) pursuant to the uniform transfers to minors Act of any state" from the definition of trust. Iowa Code § 633A.1102(18)(b). But on appeal Max does not argue chapter 633A paves his path to recovery as to the UTMA funds. Instead, Max contends his breach-of-fiduciary-duty allegation alerted Rod to the incident giving rise to and general nature of Max's claim. Max argues: "Certainly Rod and Grayson would not be surprised if Max sought to amend his petition to allege a violation of the standards of conduct for a custodian of a UTMA asset . . . ." Max points to the principle a party need not identify a specific legal theory to withstand a motion to dismiss on the pleadings. *See Cemen Tech, Inc. v. Three D Indus., L.L.C.*, 753 N.W.2d 1, 12 (Iowa 2008).

In response, Rod cites *Peterson v. Bottomley*, 582 N.W.2d 187, 188–89 (Iowa 1998), arguing because Max's petition *did* identify a legal theory by citing the trust code, Max is confined to that theory. In *Peterson*, the supreme court concluded the district court erred in finding the defendants liable for a statutory violation after a bench trial because the plaintiff only asserted common law theories of recovery. 582 N.W.2d at 189.

But the present case differs from *Peterson* in a vital respect: the stage of the proceedings. Here, the litigation is in its infancy. Not so in *Peterson*, where the district court sua sponte injected a statutory theory *after both parties presented their cases*. *Cf. id.* ("[W]e believe the Bottomleys were prejudiced by not having been put on notice that a statutory violation was being asserted."). Max has not yet engaged in discovery, which may permit him to narrow the issues and develop viable theories of recovery. *See U.S. Bank v. Barbour*, 770 N.W.2d 350, 354 (Iowa

2009); *see also Lamantia v. Sojka*, 298 N.W.2d 245, 247 (Iowa 1980) ("[R]elevant facts may be determined by discovery; issues may be narrowed by discovery, pretrial conference, or by partial summary judgment; and summary judgment provides an expeditious means of disposing of sham claims." (citation omitted)).

A petition must allege facts giving "fair notice" of the plaintiff's claim to allow the defendant to adequately respond to the allegations. *U.S. Bank*, 770 N.W.2d at 354 (quoting *Rees*, 682 N.W.2d at 79). "The 'fair notice' requirement is met if a petition informs the defendant of the incident giving rise to the claim and of the claim's general nature." *Id.* (citing *Soike v. Evan Matthews & Co.*, 302 N.W.2d 841, 842 (Iowa 1981)).

We conclude Max's petition adequately alerted Rod that Max was seeking damages for Rod's alleged bad-faith liquidation of Max's shares of Alberhasky Family LLC. *See Lamantia*, 298 N.W.2d at 247 ("The appellees' contention that one theory rather than another is evident in the pleading misses the point of [the notice-pleading rule]: if the prima facie elements of the claim are stated, and this statement is fair notice to a defendant, the petition is sufficient."); *see also Gosha v. Woller*, 288 N.W.2d 329, 331–32 (Iowa 1980) ("Such a disposition would be harsh under the circumstances here because it would unduly punish the plaintiffs for their express specificity in their pleading, contrary to the spirit and intent of notice pleading.").

The district court jumped the gun by concluding Max failed to state a claim as far as Rod's mishandling of the UTMA funds. "A court should grant a motion to dismiss only if the petition 'on its face shows no right of recovery under any state of facts.'" *U.S. Bank*, 770 N.W.2d at 354 (quoting *Trobaugh v. Sondag*, 668

N.W.2d 577, 580 (Iowa 2003)). Iowa Code section 565B.12(2) requires a custodian holding property under the UTMA to "observe the standard of care that would be observed by a prudent person dealing with property of another." We cannot say at this early stage if Max would be entitled to recover on his claim Rod maliciously and untimely liquidated Max's Alberhasky Family LLC shares.

In *Cutler v. Klass, Whicher, & Mishne*, 473 N.W.2d 178, 181 (Iowa 1991), Justice Harris mused:

> We recognize the temptation is strong for a defendant to strike a vulnerable petition at the earliest opportunity. Experience has however taught us that vast judicial resources could be saved with the exercise of more professional patience. Under [the applicable rules] dismissals of many of the weakest cases must be reversed on appeal. Two appeals often result where one would have sufficed had the defense moved by way of summary judgment, or even by way of defense at trial. From a defendant's standpoint, moreover, it is far from unknown for the flimsiest of cases to gain strength when its dismissal is reversed on appeal.

Those words play out in this case. Max's petition was adequate on its face to withstand the impatience of Rod's motion to dismiss. We reverse the dismissal of Max's petition and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**