# IN THE COURT OF APPEALS OF IOWA

---

No. 25-0446
Filed January 7, 2026

---

**Tony Dassan,**
Plaintiff–Appellant,

v.

**Sudha Maharaj, Fairfield Hospitality, LLC and DJP Holdings, LLC,**
Defendants–Appellees.

---

Appeal from the Iowa District Court for Jefferson County,
The Honorable Crystal S. Cronk, Judge.

---

**AFFIRMED**

---

Brandon M. Schwartz and Michael D. Schwartz of Schwartz Law Firm,
Oakdale, Minnesota, attorneys for appellant.

Kevin H. Collins and Dana Hempy of Nyemaster Goode, P.C., Des Moines,
attorneys for appellees.

---

Considered without oral argument
by Ahlers, P.J., and Chicchelly and Sandy, JJ.
Opinion by Sandy, J.

1

**SANDY, Judge.**

Tony Dassan appeals from the district court's ruling granting defendants DJP Holdings, LLC (DJP) and Sudha Maharaj's[1] motion for summary judgment. Upon our review, we affirm.

## STATEMENT OF FACTS & PROCEDURAL POSTURE.

This dispute arises from negotiations between Dassan and Maharaj concerning a commercial motel in Fairfield, Iowa, owned by DJP, of which Maharaj was the sole member. In early 2023, the parties began exploring ways to transfer ownership or control of the property. Although their discussions evolved through several iterations, no written agreement was ever executed, and the contemplated transactions never culminated in a transfer of title.

Initial negotiations involved Dassan and two business associates purchasing the property by satisfying DJP's outstanding mortgage and paying Maharaj an additional $250,000. Those colleagues ultimately withdrew from the proposal, and Dassan introduced another potential partner, Harcharnjit Singh. The terms again shifted—Dassan and Singh discussed acquiring the property on similar financial terms—with Dassan holding a majority interest.

During this period, and before any written agreement was signed, Dassan unilaterally organized Fairfield Hospitality, LLC (FHL), naming himself as its sole initial member and identifying the property as its business address. As discussions progressed, the parties contemplated that Maharaj would join the venture as an equity owner, eventually discussing ownership-percentage structures of 70-30 between Dassan and Maharaj or 40-30-30

---

[1] As context requires, we collectively refer to the defendants, which include Fairfield Hospitality, LLC, as "DJP."

between Dassan, Maharaj, and Singh, depending on Singh's participation. To facilitate the contemplated structure, Dassan and Singh opened an FHL bank account and deposited funds. Maharaj later wrote checks from this account, often at Dassan's request, to pay for improvements or services at the property.

Over the spring and summer of 2023, Dassan hired a painter and arranged for personal property—such as furniture, appliances, and equipment—to be delivered to the property. Some items were used at the property; others remained unused. The record reflects that the parties discussed, but never finalized, multiple documents: a draft asset purchase agreement circulated among counsel and the mortgagee bank; at least two draft operating agreements for FHL; and a contemplated side agreement between Dassan and Maharaj. None of these documents was signed, and no loan modification or foreclosure process involving the bank was completed.

Singh later withdrew from involvement, and Dassan directed that Singh's contribution to the FHL account be returned. After the lawsuit commenced, counsel for Maharaj and DJP requested that Dassan retrieve his personal property from the premises; he declined, maintaining that the property was contributed in reliance on the parties' business arrangement.

It is undisputed in the record that DJP never transferred the property to FHL, that the bank never foreclosed upon or conveyed the property, and that no signed document conveyed any interest in the motel to FHL or to Dassan. DJP later sold the property to a third party for approximately $1.7 million.

Dassan filed suit on October 10, 2023, asserting claims for declaratory judgment, promissory estoppel, and unjust enrichment against Maharaj,

DJP, and FHL. Dassan's amended petition—filed on January 24, 2024, after the district court granted his December 12, 2023 motion to amend—sought both declaratory relief and equitable remedies compelling, in substance, recognition of FHL's alleged ownership rights or compensation for his asserted contributions.

DJP moved to dismiss, arguing that Dassan lacked standing to pursue claims belonging to FHL and that he had not satisfied statutory requirements for pleading a derivative action under Iowa Code chapter 489. The court denied the motion, and discovery proceeded.

Maharaj and DJP later moved for summary judgment. They argued that: (1) Dassan lacked standing because the claims belonged to FHL, and his amended petition did not meet the pleading requirements for derivative actions; (2) the statute of frauds barred any relief requiring transfer of real property; and (3) no genuine issue of material fact existed on the promissory estoppel or unjust enrichment claims.

In resisting summary judgment, Dassan asserted that he could pursue the claims derivatively and that the record demonstrated factual disputes concerning the parties' mutual commitments, his reliance, and the benefit conferred upon Maharaj and DJP.

After a hearing, the district court granted summary judgment for DJP. As the court concluded, (1) no signed writing existed that could satisfy the statute of frauds for a transfer of real property; (2) Dassan failed to plead a derivative claim with the specificity required by Iowa Code section 489.904 (2024); and (3) Dassan lacked standing to pursue a direct action because the alleged injuries related to rights or interests of FHL rather than personal rights distinct from the entity. The court also found the evidentiary record

4

insufficient to sustain promissory-estoppel or unjust-enrichment claims that could circumvent the statute of frauds.

The court dismissed all claims with prejudice. Dassan timely appealed. The parties filed their appellate briefs and reply brief, addressing standing, the derivative-pleading requirements, the effect of the statute of frauds, and whether material factual disputes precluded summary judgment.

## STANDARD OF REVIEW.

We review rulings on summary judgment for correction of errors at law. *McClure v. E. I. du Pont de Nemours & Co.*, 23 N.W.3d 33, 40 (Iowa 2025). We will affirm a summary judgment ruling where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law," and we "view the record in the light most favorable to the nonmoving party." *Id.*

## ANALYSIS.

### I.  Standing for Direct Claims

Dassan first argues he has standing to pursue his direct-action claims. DJP argues that Dassan failed to preserve error on any argument that he has standing on those direct-action claims. We agree.

When a party moves for summary judgment, the adverse party may not exclusively rely on the allegations made in their pleadings—the adverse party "must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered." Iowa R. Civ. P. 1.981(5); *see Slaughter v. Des Moines Univ. Coll. of Osteopathic Med.*, 925 N.W.2d 793, 808 (Iowa 2019).

Summary judgment is "the put up or shut up moment in a lawsuit." *Slaughter*, 925 N.W.2d at 808 (citation omitted). Although the movant holds the burden to show the district court a lack of genuine issue of material fact, the resistance to summary judgment "must set forth specific facts which constitute competent evidence showing a *prima facie* claim." *Id.* (citation omitted).

Further, while the nonmovant "can rely upon the district court to correctly apply the law," if the district court incorrectly grants summary judgment on an unresisted motion for summary judgment, "the nonmovant must at least preserve error by filing a motion following the entry of judgment, allowing the district court to consider the claim of deficiency." *Otterberg v. Farm Bureau Mut. Ins. Co.*, 696 N.W.2d 24, 27–28 (Iowa 2005) (citation omitted). It is well established that our appellate courts find it "fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider." *Id.* at 28 (citation omitted).

Here, Dassan failed to resist the summary judgment argument on his direct-action standing. And in its ruling, the district court expressly alerted Dassan of his failure to address the issue in his resistance: "[Dassan] did not argue in his resistance that he has standing to bring these claims in a direct action." Dassan then failed to file a motion to reconsider addressing the issue after the district court's entry of judgment. Dassan failed to permit the district court to correct his "claim of deficiency." *See id.* (citation omitted). He has not preserved error on his direct-action claims.

## II.    Derivative Claims

Dassan next argues he properly pleaded his derivative claims. DJP contends that the district court was proper in finding that Dassan "failed to

satisfy the requirements to bring a derivative action on behalf of FHL." The parties disagree as to which Iowa Code version—2023 or 2024—the district court should have applied in its ruling. Because Dassan filed his amended petition on January 24, 2024, DJP argues the district court properly applied the 2024 version of the Code to this analysis. But Dassan believes the 2023 version of the Code applies because he moved for leave to amend his petition on December 12, 2023. Dassan makes this distinction because the derivative-action pleading statute was amended in 2024, and he argues that the 2023 version of the pleading statute is more favorable to his argument that he properly pleaded his derivative claims.

The 2023 version of the pleading statute required that:

> In a derivative action under section 489.902, the complaint must state with particularity any of the following:
>
> 1. The date and content of the plaintiff's demand and the response to the demand by the managers or other members.
>
> 2. If a demand has not been made, the reasons a demand under section 489.902, subsection 1, would be futile.

Iowa Code § 489.904 (2023). Section 489.902 provided that:

> A member may maintain a derivative action to enforce a right of a limited liability company as follows:
>
> 1. The member first makes a demand on the other members in a member-managed limited liability company, or the managers of a manager-managed limited liability company, requesting that they cause the company to bring an action to enforce the right, and the managers or other members do not bring the action within ninety days from the date the demand was made unless the member has earlier been notified that the demand has been rejected by the company or unless irreparable injury to the company would result by waiting for the expiration of the ninety-day period.

But the 2024 version of the statute requires that:

> In a derivative action under section 489.802, the complaint must state with particularity any of the following:
>
> 1. The date and content of the plaintiff's demand and the response to the demand by the managers or other members.
>
> 2. Why demand should be excused as futile.

*Id.* § 489.804 (2024).

Dassan does not argue that the district court's application of the 2024 was improper as applied to the facts here, rather he argues that it should have applied the 2023 statute instead. But Dassan fails to conduct an analysis of his petition's compliance with the 2023 statute, simply quoting portions of his amended petition and providing conclusory statements that his amended petition was "properly pled" and "sought derivative relief on behalf of FHL."

Yet, even if we accept without deciding that the 2023 statute should apply here, Dassan failed to meet chapter 489's pleading requirements. Under the 2023 statute, Dassan must still have "stated with particularity" the "date and content" of his demand, the response to that demand, or "the reasons a demand "would be futile." *Id.* § 489.904 (2023). The pleading requirements in derivative actions are not onerous, with our supreme court stating that the demand requirement is "easily . . . satisfied." *Berger v. Gen. United Grp., Inc.*, 268 N.W.2d 630, 636 (Iowa 1978). And where a demand is not made, the plaintiff must at least set forth "a general allegation of futility of demand." *Id.* Dassan's amended petition contains no statement that he made a demand, nor does it contain "a general allegation" of why such a demand would be futile. *See id.* Dassan claims in his reply brief, without further explanation, that because "Maharaj was the only other member of

FHL and the party alleged to have breached her promises," his amended petition makes a general allegation of futility. It seems to us that this allegation would support Dassan's interest in making a demand, but we decline to further speculate as to how that allegation makes a demand futile. *See* Iowa R. App. P. 6.903(2)(a)(8)(3) (requiring arguments to include "the appellant's contentions and the reasons for them").

Lastly, we are not convinced by Dassan's reply-brief argument that the district court's order "is not a harmless error" purely due to its application of the incorrect code version. We have viewed the record in the light most favorable to Dassan—applying the 2023 version of the code, as he requests—and his derivative-action claim still fails to meet the statutory pleading requirements. We thus find no error in the district court's ruling on Dassan's derivative-action claims.

## CONCLUSION

We affirm the district court order granting DJP's summary-judgment motion, finding no error in its rulings that Dassan lacked standing for his direct claims and failed to meet the statutory pleading requirements for his derivative claims. Because his other claims[2] turn on our reversal of those claims, we do not reach the additional claims.

**AFFIRMED.**

---

[2] Dassan also argues that the district court erred in finding that "even if [Dassan] had standing, he has failed generate a dispute of fact" relating to his promissory-estoppel and unjust-enrichment claims.

9